WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
JAMES M. PETERS, WASHINGTON STATE BAR NO. 7295
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>WILLIAM R. WILKINSON,<br><br>        Defendant. | Case No. CR-14-168-S-EJL<br><br>UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS |

The United States of America and Wendy J. Olson, United States Attorney for the

District of Idaho, by and through Justin D. Whatcott and James M. Peters, Assistants United

States Attorney, hereby submits its memorandum in opposition to the Defendant's Motion to

Suppress, filed on January 12, 2015 (Dkt. # 40).  This Court should deny the Defendant's motion.

## **INTRODUCTION**

The Defendant seeks the unusual remedy of suppression of evidence obtained from four

search warrants, each reviewed and signed by a neutral and detached magistrate judge.  The

officers investigating the Defendant sought and received judicial approval of all searches prior to

***GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS - 1***

conducting them.  This is exactly what the Fourth Amendment prefers.  The Defendant asks this Court to flyspeck the probable cause affidavits and second-guess the probable cause determinations of the magistrates.  Courts have routinely refused to do what the Defendant requests.  The Defendant cannot meet his burden of showing that the evidence seized pursuant to the search warrants was obtained in violation of his Fourth Amendment rights.  The search warrants, and the subsequent searches and seizures that were authorized therein, complied with the Fourth Amendment in all respects.

The May 24, 2013 search warrant, signed by a neutral and detached State of Idaho Magistrate Judge, was supported by ample probable cause to believe that evidence of criminal violations of Idaho Code would be discovered at the Defendant's residence.  The affidavit in support of probable cause detailed the Defendant's sexual abuse of a minor, at his residence, which occurred recently and consistently over an extended period.  It also provided probable cause to believe evidence of the abuse would be found at his residence, including digital evidence located on electronic devices.  Having obtained the approval of the elected prosecutor and the magistrate judge, the officers executing the search warrant acted in good faith.

The June 12, 2013 search warrants were likewise supported by ample probable cause, and signed by a second neutral and detached State of Idaho Magistrate Judge.  Because the May 24, 2013 search warrant authorized the search and seizure of electronic devices, the June 12, 2013 search warrants were unnecessary.  In an abundance of caution, the investigating officer provided a more particular description of the electronic devices that would be searched, and sought judicial approval for a forensic search of them.  Because the affidavit in support of the June 12, 2013 search warrants contained the same facts in support of probable cause detailed in the May 24, 2013 search warrant, no additional information was necessary.  The additional

information provided in the June 12, 2013 search warrant affidavit did not contain intentionally false or recklessly false information, and was immaterial and unnecessary to the finding of probable cause.  After obtaining the approval of the elected prosecutor, and a second neutral, detached magistrate, the officer acted in good faith in executing the warrants and seeking a forensic examination of the electronic devices.

The November 12, 2013 seizure of the Defendant's vehicle in the District of Utah was supported by probable cause to believe that the truck was evidence of the Defendant's flight from prosecution in Idaho, and that it contained evidence of his flight, his sexual abuse of H.H., and his unlawful possession of firearms.  The delay of fifteen days between the seizure of the truck and the issuance of a search warrant was reasonable under the circumstances.  The preparation of the search warrant required the involvement of multiple agencies in two jurisdictions, and the officers and agents involved acted diligently in ensuring that sufficient probable cause was submitted to the Federal Magistrate in Utah.  The November 27, 2013 search warrant was supported by ample probable cause for the search, and was signed by a neutral and detached Federal Magistrate Judge.  It did not contain any intentionally false or recklessly false information, and any alleged false information was immaterial and unnecessary to the finding of probable cause.

## FACTUAL BACKGROUND

On May 08, 2013, Sergeant J.R. Gregory of the Lincoln County Sheriff's Office received information from S.T. that he believed the Defendant had sexually abused his nine-year-old granddaughter, H.H.[1]  *See* Exhibit 1.[2]  Gregory spoke with H.H.'s mother, L.T., on May 10,

---

[1] The factual background detained herein is taken from the attached affidavits of the investigating officers, the search warrant affidavts, officers' reports, and other investigative materials.  In the event the Court orders a hearing, the Government will present testimony establishing any disputed fact, and may supplement the factual background detailed herein.

*GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS - 3*

2013.  H.H. submitted to a forensic interview with CARES[3] in Twin Falls, Idaho on May 22, 2013, which Gregory observed.  In the CARES interview, H.H. detailed sexual abuse committed by the Defendant from the time she was two years old, and consistently occurring up to her last visit with the Defendant approximately a month earlier.  *See* Exhibit 2.  H.H. described that most of the abuse occurred at the Defendant's residence.  In addition to the abuse she described, H.H. explained that the Defendant took sexually explicit photographs of her, and made her watch pornographic videos.

Based upon the information obtained from S.T., L.T., and the CARES interview of H.H., Gregory submitted an affidavit in support of a search warrant for the Defendant's residence in Shoshone, Idaho.  The affidavit was reviewed and approved by Lincoln County Prosecuting Attorney E. Scott Paul on May 24, 2013.  Gregory swore to the affidavit before the Honorable Larry R. Duff, Fifth Judicial District Magistrate Judge, on that same date, and Judge Duff subsequently signed the search warrant.  *See* Exhibit 3.[4]

On May 24, 2013, Gregory and other officers from the Lincoln County Sheriff's Office served the search warrant at the Defendant's residence.  Officers seized numerous items of evidence, including electronic devices consisting of six cell phones, two digital notepads, two laptop computers, two desktop computers, three hard drives, and a video camera.  One of the devices, an Apple Mac Mini computer, contained visual depictions of sexually explicit conduct with H.H., and images of child pornography.  These images form the basis for Counts Three and Four of the Second Superseding Indictment, and part of the basis for Counts One and Two.

---

[2] The Exhibits to this memorandum are numerous and lengthy, and include a video file.  Thus, the Government will provide these exhibits to the Court and the Defendant on a DVD, rather than filing them through ECF.
[3] "CARES" stands for "Children at Risk Evaluation Services," and provides evaluation services, including forensic interviews and medical examinations, to children who are suspected victims of abuse in much of Southern Idaho.
[4] The certified copy of the affidavit in support of the May 24, 2013 search warrant, obtained from the Lincoln County Clerk's Office, is not signed by Gregory or Judge Duff.

Officers also seized several illustrated pictures printed from an internet site depicting sexual abuse of a minor and incest.  The Defendant was not present during the search, but was arrested in Twin Falls, Idaho on that same date, and charged with five counts of Lewd Conduct with a Minor Under 16 in violation of Idaho Code § 18-1508.

On May 28, 2013, Gregory met with H.H. and L.T. at the Lincoln County Sheriff's Office.  H.H. provided Gregory with a cell phone that the Defendant had given her.  H.H. also positively identified a number of items that were seized from the Defendant's residence.  Gregory obtained a DNA sample from H.H.  A portion of this contact with H.H. was video recorded by Gregory.  *See* Exhibit 4.  Between May 28 and June 11, 2013, Gregory continued to maintain contact with L.T., and S.T., regarding the investigation into the Defendant.

On June 4, 2013, Gregory prepared an affidavit for a search warrant authorizing a forensic search of the electronic devices seized from the Defendant's residence on May 24. Gregory submitted the affidavit to Prosecuting Attorney Paul for his review and approval.  Upon Paul's approval, Gregory swore to the accuracy of the affidavit on June 11, 2013, and it was presented, along with two proposed search warrants, to The Honorable Mark Ingram, Fifth Judicial District Magistrate Judge.   Judge Ingram signed the search warrants on June 12, 2013. *See* Exhibit 5.  Gregory executed the search warrants by transporting the electronic devices to the Intermountain West Regional Computer Forensics Laboratory in Boise, Idaho, on June 17, 2013.

On October 24, 2013, the state charges against the Defendant were dismissed, pending a review of the forensic examination of the computers, and the completion of DNA testing on items seized from the Defendant's residence.  On October 31, 2013, Gregory received the results of the forensic examination of the Defendant's computer, and sought refiling of the charges against the Defendant and an arrest warrant.  On November 1, 2013, the Defendant was again

*GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS - 5*

charged with five counts of lewd conduct with a minor under 16, and a warrant for his arrest was issued with a $75,000 bond.

On November 1, 2013, deputies from the Twin Falls County Sheriff's department attempted to arrest the Defendant at his place of employment, the Rock Creek Grill, in Twin Falls, Idaho. The Defendant fled out the back door upon being told officers were there to speak to him. On November 3, 2013, Andy McClure, a deputy with the Jerome County Sheriff's Office, spoke to Carl Fillmore, who is the Defendant's stepfather, and with whom the Defendant was living in Jerome. McClure told Fillmore that officers were looking for the Defendant, and left a business card with him. Fillmore later told McClure that he provided the card to the Defendant, and that the Defendant grabbed a 9mm handgun and a 30-30 rifle, and left the residence in his pickup truck. McClure provided this information to Gregory.

On November 4, 2013, Gregory observed a pickup truck that he believed belonged to the Defendant at Craig Hadden's house, which was next door to the Defendant's residence in Shoshone. Gregory ran the registration and discovered that it had recently been registered to Hadden. Gregory spoke to Hadden, who told him that he and the Defendant had traded vehicles on October 25, 2013, and that the Defendant was now driving a 2005 dark blue Chevy truck with Idaho license plate 4L7841 that used to belong to Hadden. Hadden also stated that the Defendant might not have registered the truck in his name. Gregory confirmed that the truck was still registered in Hadden's name. Gregory put an attempt to locate on the vehicle with surrounding law enforcement agencies.

Gregory provided information to the U.S. Marshal's Office about the arrest warrant for the Defendant, the vehicle he was driving, and the fact that he had family in the Salt Lake City area. Gregory also received information from Mark Johnston, the Defendant's brother-in-law,

that the Defendant knew about the state charges, and was "laying low" until his attorney could get them dismissed.  Johnston told Gregory that the Defendant stated he might go to Mexico or Hawaii.

Between November 5 and 12, 2013, the U.S. Marshal's Fugitive Task Force in Salt Lake City, Utah attempted to locate the Defendant.  *See* Exhibit 6.  On November 12, 2013, agents with the task force located the dark blue Chevy truck with Idaho license plate 4L7841 at an apartment complex in Salt Lake City.  Agents observed the Defendant walk to the vehicle, access the passenger compartment, then walk away from the vehicle.  The Defendant was then arrested. Deputy U.S. Marshal Bobby Arnes looked through the rear passenger window of the truck and observed a laptop computer and a possible rifle case.  Deputy U.S. Marshal Rick Simonelli called Gregory and informed him of the arrest, as well as the items observed in the Defendant's vehicle.  *See* Exhibit 7.  Gregory requested that the vehicle be impounded so that he could seek a search warrant.  The vehicle was towed to the impound yard at the Unified Police Department (UPD) of Greater Salt Lake.

On November 13, 2013, Gregory spoke to Lincoln County Prosecutor E. Scott Paul about obtaining a search warrant for the vehicle.  Later that day, Paul informed Gregory that they could not seek a State of Idaho search warrant because the truck was located in Utah.  Gregory contacted the U.S. Marshal's Service in Boise and inquired about them assisting in obtaining a federal search warrant.  The U.S. Marshal's Service informed him that they could not assist in seeking a warrant.

On November 14, 2013, Gregory spoke to FBI Agent Rebekah Morse about obtaining a federal search warrant for the Defendant's vehicle.[5]  The next day, Gregory and Morse met with Assistant U.S. Attorney Jim Peters at the U.S. Attorney's Office in Boise to discuss the drafting

---

[5] Agent Morse passed away on March 20, 2014.

of a federal search warrant.  Morse agreed to draft the affidavit, and Gregory agreed to provide her with his investigative materials.  Gregory provided investigative reports for Morse to review. Also on that day, UPD Detective Bruce Huntington had an evidence technician take photographs of the exterior of the Defendant's vehicle.  *See* Exhibit 9.  He e-mailed them to Gregory, who forwarded them to Morse on November 19, 2013.  *See* Exhibit 11.

Morse arranged for FBI Special Agent Daniel Horan to assist in presenting the application for the search warrant in the District of Utah, and to act as the affiant.  On November 22, 2013, Morse requested Grand Jury subpoenas as part of her investigation.  *See* Exhibit 12. Morse made arrangements for a forensic interview of H.H by FBI Child Adolescent Forensic Interviewer Rachael Happel.  Happel traveled to the District of Idaho and conducted the interview of H.H. on November 25, 2013.  On November 26, 2013, Morse sent a draft of the affidavit to Assistant U.S. Attorney Peters for his review.  *See* Exhibit 13.  After reviewing the affidavit, AUSA Peters sent the affidavit to Horan, Morse, Ernest Weyand (Morse's supervisor), and Carol Dain, an AUSA in the District of Utah.  *See* Exhibit 14.  AUSA Dain reviewed the affidavit, "made a few minor edits," and then sent it back out to Peters, Horan, Morse, and Weyand.  On November 27, 2013, the affidavit and search warrant was sworn by Horan before the Honorable  Brooke C. Wells, United States Magistrate Judge for the District of Utah.  Judge Wells signed the search warrant, and Agent Horan served it that same day.  *See* Exhibits 9, 15.

Among the items Horan seized from the Defendant's truck, pursuant to the warrant, was an Apple laptop computer with a Toshiba 500GB hard disk drive.  This device contained visual depictions of sexually explicit conduct with a child under eighteen years, and images of child pornography, which form the basis for Counts One, Two, Five, and Six of the Second Superseding Indictment.

## ARGUMENT

**I.** **The State Magistrate properly found probable cause for the May 24, 2013 Search Warrant in Lincoln County, Idaho**.

The May 24, 2013 search warrant affidavit, prepared and sworn to by Lincoln County Sheriff's Deputy J.R. Gregory, established probable cause to believe evidence of the crime of lewd conduct with a minor would be found at the Defendant's residence.  Specifically, the affidavit detailed disclosures by the victim that described sexual abuse that the Defendant committed, at his residence, which was both consistent over time and recent.  A neutral, detached magistrate reviewed the facts in the affidavit and made a practical, common-sense decision that, given all the circumstances detailed in the affidavit, a fair probability existed that the evidence to be seized would be found in the place to be searched.  The facts in the affidavit gave the Magistrate a substantial basis for determining that probable cause existed for the search of the Defendant's residence.

The facts detailed in the affidavit also provided a substantial basis for the Magistrate's determination that probable cause existed to believe digital evidence would be discovered on electronic devices in the Defendant's residence.  The facts in the affidavit established that the Defendant took sexually explicit photos of the victim using a digital device, that the victim had taken photos that were evidence of the sexual abuse, that the Defendant showed the victim pornographic movies, and that the Defendant had accessed pornographic websites that depicted young females in the past.  The Magistrate did not err in his finding of probable cause.  Having obtained judicial approval for the search, the officers executing the warrant acted in good faith reliance upon the Magistrate's determination of probable cause.

The Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant.  *See Illinois v. Gates,* 462 U.S. 213, 236 (1983).  To satisfy the warrant

requirement, an impartial judicial officer must assess whether the police have probable cause to conduct a search and seize evidence.  *See Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 301-302 (1967).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates,* 462 U.S. at 238.  A reviewing court should simply assure that the magistrate had a "substantial basis" for concluding that probable cause existed.  *Id.,* citing *Jones v. United States,* 362 U.S. 257, 271 (1960).  A magistrate's determination of probable cause in issuing a search warrant "should be paid great deference by reviewing courts."  *Id.,* citing *Spinelli v. United States,* 393 U.S. 410, 419 (1969), *see also United States v. Brobst,* 558 F.3d 982, 993 (9th Cir. 2009).  Reviewing courts should not "flyspeck" the affidavit supporting a search warrant through de novo review.  *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc), *United States v. Kelley,* 482 F.3d 1047, 1050 (9th Cir. 2007).

Probable cause means less than evidence that would justify condemnation, and evidentiary standards such as proof beyond a reasonable doubt or preponderance of the evidence have no place in a magistrate's decision.  *See Gates*, 462 U.S. at 235, citing to *Locke v. United States,* 3 L.Ed. 364 (1813), and *Spinelli,* 393 U.S. at 419.  Probable cause "deals with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  *Brinegar v. United States,* 338 U.S. 160, 175 (1949).  It is a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily or even usefully, reduced to a neat set of legal rules."  *Gates*, 462 U.S. at 232.

"An affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of probable cause." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013).   Probable cause determinations may be based in part on reasonable inferences. *See Gourde*, 440 F.3d at 1071.  A reviewing court "must give due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers." *Ornelas v. United States,* 517 U.S. 690, 699 (1996). Resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to warrants. *See Gates*, 462 U.S. at 237.

> a. The search warrant affidavit established probable cause to search the defendant's residence for evidence of the crime of sexual abuse of a minor.

The affidavit in support of the May 24, 2013 search warrant provided facts supporting the magistrate's conclusion that probable cause existed to search the Defendant's residence.  The affidavit established that the allegations of abuse occurred at the Defendant's residence, and that the Defendant was living at the residence sought to be searched.  The facts in the affidavit established a reasonable nexus between the residence and the items sought to be seized, and thus the magistrate properly found that it was reasonable to believe that the evidence sought would be found at the residence.

The Fourth Amendment requires that a search warrant must particularly describe the place to be searched and the items to be seized.  "Search warrants must be specific in particularity and breadth." *Brobst,* 558 F.3d at 993.  "Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Towne*, 997 f.2d 537, 544 (9th Cir.1993).

As to the description of the place to be searched, "it is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).  A magistrate judge may issue a warrant for a residence if a "reasonable nexus" exists between the residence and the evidence sought; that is, the magistrate "need only find that it would be reasonable to seek the evidence there." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).  In the end, he must make a "practical, common-sense decision." *Gates*, 462 U.S. at 238.

The facts detailed in the affidavit provided probable cause to believe that the Defendant committed sexual abuse against H.H. at his residence.  The affidavit details information from S.T. and L.T. that the Defendant had visitation with H.H. at his residence.  S.T. stated that H.H. would "go to Roger's," that the Defendant had told H.H. that "she couldn't see her animals unless she would come back to visit," and that H.H. was very upset about not seeing her animals. L.T. made the following statements regarding H.H. visiting the defendant's residence, all of which were detailed in the affidavit:

- She had previously agreed to let H.H. "visit Roger," and after a while, the Defendant obtained visitation rights to have H.H. "two times a month."
- H.H. "would go to Roger's house and when she came back she would be quit (sic) and not wanting to talk."
- The Defendant had purchased animals for H.H. that the Defendant told H.H. "would miss her until she came back."
- The Defendant "has exposed H.H. to sexual porn contents at his house."
- "H.H. would have a different cell phone every time she would come back from Roger's."
- H.H. "is starting to cry before going to Roger's house."

Statements made by H.H. in the CARES interview, as detailed in the affidavit, also established that the abuse occurred at the Defendant's residence:

- She was worried about not seeing the Defendant "because she would not be able to see her animals."
- The Defendant put her into "a cold bed which was Roger's bed."
- In regards to the abuse, "it always happened when she was there," and that it happened "the last time she was there."
- After abusing her, the Defendant "got off of her and he said he was going to cook breakfast."
- The abuse took place "in Roger's bed."  H.H. drew a picture of where the bed was.
- The abuse "happened again and again," and "will happen next month when she comes back."
- "Roger has his clothes off at 6 or 7 at night when they are at home."
- After describing sex toys the Defendant had, H.H. stated she "wanted to go to Roger's house and take pictures of what was in there."

The affidavit also established that the Defendant lived at the residence sought to be searched.  The first sentence of the affidavit gives the description of the residence and the second sentence states that the Defendant is "living at the residence."  S.T. stated that L.T. and H.H. lived "with Roger" at the residence from 2006-2008, and he provided the address of the residence. He also stated that H.H. "would go to Roger's twice a month."  The information provided by S.T. established that the Defendant lived at the address to be searched, and that it was the location where the Defendant had regular visitation with H.H.  This information alone supported probable cause to believe the place to be searched was the Defendant's residence.

The affidavit contained much more than that, however.  The affidavit repeatedly references "Roger's house" as the location where H.H. visited the Defendant.  It also establishes that the abuse took place since H.H. was two years old, that it "always happens when she is

there," that it happened "the last time she was there," and that it will happen "next month when she comes back."

The underlying facts in the affidavit provided sufficient information for the magistrate to draw his own reasonable inference and conclusion that evidence would be discovered at the Defendant's residence, and that the residence sought to be searched was in fact the Defendant's residence.  Nothing in the affidavit indicates that the Defendant lived at another residence or that the abuse took place anywhere other than the Defendant's residence.  Rather, the affidavit is consistent in describing all of the events as taking place at the Defendant's residence.  The affidavit clearly established, in the first two pages, that the Defendant currently lived at the residence to be searched, that it was the residence that H.H. had previously lived with him at, and that it was the location where H.H. was currently visiting the Defendant once a month.  Based upon this information, it was reasonable for the magistrate to conclude that the subsequent references in the affidavit to "Roger's house" referred to this same residence.

The Defendant asks this court to "flyspeck" the affidavit and conclude that the affiant did not provide enough specific supporting information establishing that the Defendant currently lived at the residence.  This level of specificity is not required, however.

> "Affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area.  Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of "probable cause."

*Gates*, 462 U.S. at 236.  The affidavit provided sufficient facts, including current information that supported the magistrate's determination that the Defendant lived at the residence to be searched, and that evidence of the Defendant's sexual abuse of H.H. would likely be discovered there.

Even if the officer had provided a mistaken address in the search warrant, this would not invalidate the warrant. This is because a police officer may particularize a mistaken warrant by relying on personal knowledge to identify the place intended to be searched. *See Brobst,* 558 F.3d at 992-993. Gregory had specific personal knowledge that the Defendant was currently living at the residence to be searched. *See* Exhibit 1, paragraphs 3, 6. He also took photographs of the residence and attached them to his search warrant affidavit. Even if this Court determines that the officer should have included additional information establishing that the Defendant currently lived at the residence, Gregory's own personal knowledge, and good faith in relying upon the same, weighs heavily against suppression. The officer's good faith in executing the warrant is addressed in subsection c. below.

      b.  <u>The search warrant affidavit established probable cause to seize and forensically search electronic devices, including cell phones and computers.</u>

The magistrate properly found, based on the facts in the affidavit, that a fair probability existed that digital evidence would be located on electronic devices in the Defendant's residence. The affidavit provided probable cause that the Defendant had possessed digital photos of H.H. on her back with her underwear off, that H.H. had taken a picture of "what is going on," that there were two phones with the picture, and that she took a picture of the Defendant trying to "French kiss" her. Additionally, the affidavit established that the Defendant had exposed H.H. to pornography at his residence, had shown H.H. pornographic videos depicting "the kind of things that Roger is doing to her," and that the Defendant had accessed pornographic websites depicting young girls at his residence in the past. It was not illogical or contrary to common sense to conclude, based on these facts, that the Defendant would probably have digital evidence of his sexual abuse of H.H. on electronic devices at his residence.

The standards for determining probable cause, as spelled out in *Gates,* apply with equal force to cases involving evidence on a computer.  *See Kelley*, 482 F.3d at 1050.  Whether a fair probability exists that contraband will be found in a particular place depends on the totality of the circumstances, including reasonable inferences, and is a "commonsense, practical question."  *Id*., (*citing Gourde,* 440 F.3d at 1071).  Neither certainty nor a preponderance of the evidence is required, and courts should not "flyspeck" the affidavit through de novo review.  *Id*.

The facts in the affidavit provided probable cause to believe that digital evidence of the Defendant's sexual abuse of H.H. would be found on electronic devices in his residence.  This evidence consisted of the following:

- H.H. described consistent sexual abuse at the Defendant's residence.  She disclosed that the Defendant would rub on her "from her toes to her privates" and kiss her all over while he was naked.  She described the Defendant rubbing something that "looked like a mushroom" on her, and that something came out of it that "felt really, really gross."  She described the Defendant touching her "privates," and trying to kiss her and "put his tongue inside her mouth."  She also described the Defendant's use of sex toys while he was abusing her, and explained that they were located in a suitcase at the Defendant's residence.

- L.T. stated that the Defendant looked at pornographic websites when she lived with him in 2008, including "young girls' porn and a website called "barely 18," and that he admitted looking at pornography on his computer.

- L.T. stated that the Defendant exposed H.H. to sexual porn contents at his house, and that H.H. wrote two websites on a lunch menu that referenced pornography.

- L.T. stated that the Defendant provided H.H. with multiple cell phones, and told her not to show them to L.T.  L.T. observed sexual content on one of the phones.

- H.H. told L.T. that the Defendant is naked with her and "watches porn."

- H.H. told L.T. that she has taken a picture of "what is going on" and there are "two phones with the picture."
- H.H. took a digital photo, using her phone, of the Defendant trying to "French kiss" her by sticking his tongue in her mouth.
- H.H. stated in the CARES interview that the Defendant makes her watch "some really bad movies."  When asked about the "bad parts," H.H. stated "like the kind of things that Roger is doing to her."  She gave further detail of "cheerleaders" without their shirts on.
- H.H. stated that the Defendant took three pictures of her.  She explained he made her lie down on her back and took off her underwear and then took a picture.  The next month she came back, she deleted the picture.

The totality of the circumstances presented by these facts led the magistrate to the reasonable conclusion that a fair probability existed that the Defendant possessed digital evidence of his sexual abuse of H.H.  The inquiry is not whether any of these allegations, standing alone, provided probable cause to believe the Defendant possessed child pornography. Rather, the proper inquiry is whether these facts, taken as a whole, support the magistrate's reasonable inference and conclusion that digital evidence of the Defendant's crimes of sexual abuse would be discovered at his residence.  The common sense, practical conclusion is that they do.

The affidavit details abuse that occurred recently and consistently over an extended period.  The facts in the affidavit provided probable cause to search his residence for evidence of the abuse.  Included in the affidavit were facts establishing (1) that the Defendant took photos of H.H. on her back with her underwear off;  (2) that H.H. described the Defendant's abuse and stated that she took photos of "what was going on;" (3) that H.H. took a photo of the Defendant attempting to "French kiss" her; (4) that the Defendant had showed H.H. pornographic videos

depicting "what he was doing" to H.H., referencing the abuse that she described, (5) that the Defendant had provided H.H. with multiple phones, including one that had pornography on it; (6) that the Defendant had exposed H.H. to pornographic websites at his residence, and; (7) that the Defendant has previously accessed pornography involving young girls on the internet. Having read these facts, the magistrate reasonably concluded that probable cause existed to believe that digital evidence of the Defendant's abuse of H.H. would be found at the Defendant's residence.

The Defendant claims that the search warrant was overbroad in that it authorized a general search of any electronics or images, rather than restricting the same to images of child abuse. The language in the search warrant limited the search for digital evidence pertaining to images of minor children. The Defendant focuses on the failure of the warrant to restrict the seizure to images that depict child pornography or the alleged crime of sexual abuse. However, digital images of minor children, including H.H., would be relevant evidence to the Defendant's crime. Such images could prove the Defendant's access to and involvement with H.H., they could show his sexual intent as it related to H.H. or other minor children, they could corroborate the information provided by S.T., L.T., or H.H., or they could identify other potential victims. The potential evidentiary value of such evidence, given the allegations detailed in the affidavit, is very broad. Thus, the search warrant need not be as narrowly tailored as the Defendant claims. The language in the search warrant provided objective limits to assist officers in determining what items they could seize. *See United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997). This is all that was required, and no further specificity of the items to be seized was necessary.

No further specificity of the devices to be searched was necessary. Any electronic storage device would be capable of containing the items to be seized. *See United States v.*

*Giberson*, 527 F.3d 882, 888 (9th Cir. 2008) ("…to search a container, it must be reasonable to expect that the items enumerated in the search warrant could be found therein.  If it is reasonable to believe that a computer contains items enumerated in the warrant, officers may search it.").  Having established probable cause that the defendant possessed contraband or evidence in a digital format, the officers could search any digital container in which that evidence could reasonably be found.  As the officers had no way of knowing where the images were stored, "no more specific description of the computer equipment sought was possible."  *See United States v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000).  Further, after seizing items capable of containing digital evidence pursuant to the May 24, 2013 search warrant, Officer Gregory submitted a second and third search warrant on June 11, 2013, which provided a more particular description of the specific electronic devices to be searched.  *See Giberson,* 527 F.3d at 889 (finding that actions of agents were "particularly appropriate" because they "merely secured the computer while they waited to get a second warrant that would specifically authorized searching the computer's files.").

The Defendant further claims that the probable cause regarding digital evidence was stale.  Staleness is evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought."  *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993).  Information offered in support of a search warrant is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984).

The information in the affidavit was not so stale as to eliminate the probability that digital evidence would be found at the Defendant's residence.  The facts in the affidavit detailed a continuing pattern of abuse, committed consistently over a long period.  The allegations were

also recent, as H.H. stated that it always happened when she was at the Defendant's, that it happened the last time she was there, and that it would happen next month when she comes back. It is reasonable to infer that the allegations related to potential digital evidence occurred over a period of time as well.  H.H. described multiple phones with pictures on them, and L.T. stated that the Defendant was always providing H.H. with new phones.  H.H. spoke about pornographic movies (plural) that the Defendant had shown her that depicted "the kinds of things Roger was doing to her."  Further, H.H. was still in possession of the photo of the Defendant attempting to "French kiss" her, and showed the same to L.T. and Gregory.  Finally, the affidavit also establishes the Defendant's interest in pornography involving young girls dating back at least five years.

The Defendant argues that the only evidence that the Defendant was on a computer was five years old.  The Defendant asks this Court to require concrete evidence that the digital evidence would be located on a specific electronic device.  In doing so, he asks this Court to "elevate probable cause to a near certainty."  *Gourde*, 440 F.3d at 1072.  This Court need not do so, as only a reasonable probability is necessary, and the affidavit established a reasonable probability that the Defendant possessed digital evidence of his abuse of H.H.  It was a reasonable inference for the magistrate to determine that such digital evidence would be discovered on electronic storage devices, including "computers, disk drives, and other electronic equipment capable of recording pictures . . .," as detailed in the search warrant.  *See* Exhibit 3, May 24, 2013 Search Warrant, page 2.  It is difficult to imagine where a digital image would be located, if not on an electronic device.  *See Hay,* 231 F.3d at 637 (holding that, as the officers had no way of knowing where the images were stored, "no more specific description of the computer equipment sought was possible").

The Defendant points to the fact that the affidavit does not specifically give a date as to when the Defendant took the digital photographs of the victims, or when he showed her the pornographic videos.  However, the nature of digital evidence makes such a detailed inquiry unnecessary.  As the Ninth Circuit has noted, "thanks to the long memory of computers, any evidence of a crime was almost certainly still on his computer, even if he had tried to delete the images."  *Gourde*, 440 F.3d at 1071.  The passage of time is less significant in computer evidence cases, as forensic examiners have the ability to recover files from a computer, even when they have been deleted, corrupted, or hidden.  *See Hay,* 231 F.3d at 636, *Lacy,* 119 F.3d at 74-746, *United States v. Chase*, 2006 WL 2347726, at *4 (D.Nev. 2006) (finding that three year old information about child pornography was not stale under the circumstances).  As Gregory's affidavit explained, data on digital device can be recovered "days or months after they have been stored in the devices' memory and can be retrieved by experts even after they have been deleted."  *See* Exhibit 3, page 9.  Additionally, given that H.H. still had one of the photos on her phone, it was reasonable to infer that other digital evidence still existed.

Under the totality of the circumstances, including all reasonable inferences taken from the facts in the affidavit, the magistrate properly determined that there was a fair probability that digital evidence would be located on electronic devices in the Defendant's residence.  Even if this Court were to hold that the warrant was insufficient as it related to the digital devices, Gregory acted in good faith in relying upon the magistrate's approval of the warrant, and possessed probable cause to seize the electronic devices from the Defendant's residence in order to obtain a second search warrant.

     c. <u>Even if this Court finds that the probable cause was insufficient, suppression is not appropriate because the law enforcement officers reasonably relied upon the search warrant and their own knowledge in executing the search warrant.</u>

The investigating officer in Lincoln County, Deputy Sheriff J.R. Gregory, did exactly what the Fourth Amendment prefers: he sought and received judicial approval prior to conducting a search of the Defendant's residence.  In addition, Gregory sought and received approval of his probable cause affidavit from his elected prosecutor, E. Scott Paul.  Gregory acted in good faith reliance upon the approval of his elected prosecutor and the magistrate when serving the search warrant, and thus suppression is not appropriate even if this Court determines the search warrant was deficient.

If a search warrant is found to be deficient, suppression is not an automatic remedy.  This is because the "Fourth Amendment has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons."  *Stone v. Powell,* 428 U.S. 465, 486 (1976).  The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrence effect," and is "separate from the question of the whether the rights of the party seeking to invoke the rule were violated by police conduct."  *See United States v. Leon*, 468 U.S. 897, 906 (1984), quoting *United States v. Calandra,* 414 U.S. 338, 348 (1974), and *Gates*, 462 U.S. at 223.  When law enforcement officers have acted in objective good faith, or their transgressions have been minor, the magnitude of the benefit conferred by application of the exclusionary rule "offends basic concepts of the criminal justice system."  *Id.* at 907.

In *Leon*, the Supreme Court held that "our evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be

admissible in the prosecution's case in chief."  468 U.S. at 913.  In holding that suppressing evidence obtained pursuant to a warrant that the police reasonably believed to be lawful would not deter police misconduct, the *Leon* Court created the "good faith exception" to the exclusionary rule.  If an officer's reliance on a warrant is "objectively reasonable," the good faith exception applies.  *Id*. at 922.  The good faith exception may not apply, however, in the following circumstances:

(1) When a magistrate issues a warrant based on a deliberately or recklessly false affidavit;
(2) When a magistrate fails to act in a neutral and detached manner;
(3) When a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;
(4) When a warrant is so facially deficient that no reasonable officer could believe it to be valid, and;

*See Id.,* 468 U.S. at 914-916, 923.

"Suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further purposes of the exclusionary rule."  *Id*. at 918.  "'[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness', for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'"  *Id.* at 922, quoting *Gates,* 462 U.S. at 267, *United States v. Ross*, 456 U.S. 798, 823 (1982).  An officer's consultation with a government attorney is of "significant importance to a finding of good faith." *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir. 1992).

Gregory acted in good faith in relying upon the approval of his elected prosecutor, and the magistrate's finding of probable cause, in executing the warrant for the Defendant's residence. Gregory made changes to the affidavit when requested by the prosecutor, and was not requested to make any changes or additions by the magistrate.  Having sought and received judicial approval, his actions in executing the search warrant were reasonable under the Fourth

Amendment.  The four "exceptions" invalidating reliance on an officer's good faith do not apply to this case.

Even if this Court were to accept the Defendant's claims that the affidavit was deficient regarding the probable cause for the Defendant's residence or to seize computers, this is not a case where suppression would further the purposes of the exclusionary rule.  Gregory did exactly what the Fourth Amendment prefers in obtaining judicial approval of the search.  The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  *Leon*, 468 U.S. at 922, *see also United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994).  When assessing the objective reasonableness of a police officer executing a warrant, a court should look to the totality of the circumstances, including any information known to the officer, but not presented to the issuing judge.  *See United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987) (citing to *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

As explained above, the affidavit established probable cause to believe that the Defendant lived at the place to be searched, and that digital evidence of his abuse of H.H. would be found at that residence.  Given all the facts detailed in the affidavit, any reasonably well-trained officer would have believed that the search was legal.  This is especially true given the approval of the affidavit and warrant from the state prosecutor.  Gregory's affidavit in support of the May 24, 2013 warrant was not facially deficient, it did not include intentionally false or recklessly false information, and there is no evidence that the magistrate failed to act in a neutral and detached manner.

Further, Gregory possessed current information about the Defendant's residence that was not presented to the magistrate.  He confirmed the Defendant's residence through NCIC before

seeking the warrant.  *See* Exhibit 1, paragraph 3.  He also had personal knowledge that the Defendant had lived at the residence since at least 2010.  *See* Exhibit 1, paragraph 6.  Thus, his good faith reliance on the magistrate's determination that probable cause existed to search the Defendant's residence was further supported by his own knowledge that the Defendant currently lived at the residence.

The Defendant argues that the good faith exception should not apply because the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable. "[T]he threshold for establishing this exception is a high one" because "'in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012), *quoting Leon*, 468 U.S. at 921.  "It is the role of the magistrate, after all, "'to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *United States v. Grant*, 682 F.3d 827, 836 (9th Cir. 2012), quoting *Messerschmidt*, 132 S.Ct. at 1245, *Leon*, 468 U.S. at 921.  The inquiry 'is whether the affidavit was sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *United States v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir. 1994) (quoting *United States v. Hove,* 848 F.2d 137, 139 (9th Cir. 1988), *Leon*, 468 U.S. at 923).  If so, then the affidavit could not be considered a "bare bones" affidavit so lacking in probable cause to render official belief in its existence entirely unreasonable.  *See id*.

The arguments detailed in paragraphs a. and b. above, that probable case existed to search the Defendant's residence and to seize digital evidence, is a "colorable argument" sufficient to "create disagreement among thoughtful and competent judges as to the existence of probable cause."  *Hove*, 848 F.2d at 139.  The Government will not repeat those arguments again.  The

fact that thoughtful and competent judges could find probable cause is further supported by the fact that two separate neutral and detached state magistrates reviewed virtually the same facts and determined that probable cause existed.

In *Hove,* the Ninth Circuit found that the affidavit in support of a search warrant was so deficient of probable cause as to render official belief in its existence unreasonable.  848 F.2d at 137.  The Court in *Hove* found that "the affidavit offers no hint as to why the police wanted to search this residence," that it did "not link this location to the defendant," and that it did "not offer an explanation of why the police believed they may find incriminating evidence there."  *Id.* at 139.  The complete lack of facts establishing probable cause to search the location in *Hove* shows the extreme circumstance required to establish a "bare bones" affidavit.  In contrast, the detailed facts contained in Gregory's affidavit weigh heavily against the Defendant's claim that this was a "bare bones" affidavit.  The Defendant has not met the "high threshold" required to show that a reasonable officer would not have believed probable cause existed.

Finally, even if this Court were to determine that the affidavit was so lacking in probable cause for a search of digital devices as to render official belief in its existence unreasonable, Gregory's actions in seizing the digital devices was objectively reasonable.  Gregory did not search the digital devices at the residence, but rather seized them and sought a second and third search warrant that would permit forensic searches of them.  This was reasonable.  *See Giberson*, 527 F.3d at 889 (finding that actions of agents were "particularly appropriate" because they "merely secured the computer while they waited to get a second warrant that would specifically authorized searching the computer's files.").

The good faith seizure of electronic devices was further supported by the discovery of printed pictures depicting incest and sexual abuse of a minor at the Defendant's residence.  *See*

Exhibit 5.  The nature of the pictures clearly shows that they were accessed by a computer and printed out from an internet site.  Officers located numerous electronic devices at the Defendant's residence.  Even if this Court were to determine that the seizure of the electronic devices was not justified in the search warrant affidavit, the discovery of printed pictures of sexual abuse from the internet at the Defendant's residence gave Gregory probable cause to seize the numerous electronic devices found at the residence in order to seek a second search warrant.  He did seek a second and third search warrant to forensically search those electronic devices, which further illustrates his good faith attempts to comply with the Fourth Amendment.

## II.   The State Magistrate properly found probable cause for the June 12, 2013 search warrants in Lincoln County, Idaho.

  a.   The search warrant affidavit established probable cause to search the electronic devices seized during execution of the May 24, 2013 search warrant.

The May 24, 2013 search warrant permitted a seizure and search of electronic devices found in the Defendant's home.  As detailed above, the magistrate reasonably found a fair probability existed that digital evidence of the Defendant's sexual abuse of H.H. would be discovered at the Defendant's residence.  As a result, the June 12, 2013 search warrants were not necessary.  A neutral and detached magistrate had already authorized the seizure of electronic devices, and a search of those devices for digital evidence of the Defendant's crimes.  Thus, the seizure, and subsequent search of, the electronic devices found in the Defendant's residence complied with the first search warrant, and was not a violation of the Defendant's Fourth Amendment rights.

In an abundance of caution, Gregory prepared a second affidavit in support of two additional search warrants seeking authorization of a forensic search of the electronic devices discovered at the Defendant's residence.  The second affidavit contained all of the facts presented

in the May 24, 2013 search warrant affidavit, with some limited additional information.  The effect of the second and third warrants was simply to provide a more particular description of the items to be searched.  This more particular description was not possible in the first affidavit because Gregory did not possess specific information about the exact electronic devices possessed by the Defendant at his residence.

A second neutral, detached magistrate reviewed the second affidavit and concluded that probable cause existed for a forensic search of the electronic devices.  Although the magistrate did not indicate on the warrants the category under which the searches were authorized, the inclusion of significant detail on "forensic searches" indicates that the magistrate found that probable cause existed to believe that digital evidence would be found on the electronic devices.  As explained above, the facts in the affidavit provided probable cause to believe that digital evidence of the Defendant's sexual abuse of H.H. would be discovered on these devices.  Further, the second affidavit included information about the printed pictures depicting incest and sexual abuse of a minor that were discovered at the Defendant's residence.  These pictures were attached to the second affidavit, and clearly showed that the pictures were accessed from the internet.  Under the totality of the circumstances, the magistrate reasonably concluded that there was a fair probability that digital evidence would be found on the computers.

The Defendant argues that the additional information in the second affidavit included intentionally false or recklessly false statements.  These statements were not intentionally or recklessly false, as explained below.  To receive a hearing on a claim of false statements in a search warrant affidavit, the Defendant must show that the affidavit cannot support a finding of probable cause without the allegedly false information.  *See United States v. Payton*, 573 F.3d

859, 861 (9th Cir.2009), *Franks v. Delaware*, 438 U.S. 154, 171 (1978)[6].  The inclusion of an

allegedly false statement is material only if the affidavit cannot support a finding of probable

cause without the statement.  "[I]f, when material that is the subject of the alleged falsity or

reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to

support a probable cause, no hearing is required."  *Franks*, 438 U.S. at 171-72.

        The Defendant cannot meet his burden of showing that, but for the allegedly false

statements, probable cause for the search warrant did not exist.  This is because the May 24,

2013 affidavit established probable cause to seize and search electronic devices.  Thus, the

second affidavit on June 12, 2013, which contained the identical information as the first

affidavit, also established probable cause to seize and search electronic devices.  The alleged

false statements are immaterial to the probable cause finding for the second affidavit.

Additionally, the second affidavit included the printed pictures of incest and sexual abuse that

had been accessed from the internet.  The Defendant does not allege that this information was

false, as the pictures were attached to the second affidavit and provided to the magistrate.

        The Defendant's challenge to the forensic search of the electronic devices fails.  The

searches were not a violation of the Defendant's Fourth Amendment rights.  Rather, the searches

were authorized by two neutral, detached magistrates who reviewed the same facts and

determined that a reasonable probability existed that digital evidence would be discovered on the

electronic devices.  Because probable cause existed separate from the alleged false statements,

these statements are immaterial.  As a result, this Court need not make a finding regarding the

allegations of false statements, and the Defendant is not entitled to a *Franks* hearing.

---

[6] The Government submits that a *Franks* hearing is not required in this case.  Both the June 12, 2013, and the
November 27, 2013, search warrant affidavits supported probable cause absent the statements the Defendant alleges
as false.  Thus, the Defendant has not met his burden of showing the second prong of *Franks*, and this Court need
not grant him a hearing on his claims.

      b.  <u>The search warrant affidavit did not contain intentionally false or recklessly false information that was material to the probable cause finding.</u>

Gregory did not present intentionally false or recklessly false information in his second affidavit.  The additional information included in the second affidavit consisted of information that Gregory had received during his investigation, and reasonable inferences he took from the information.  Although one of the statements was incorrectly attributed to the CARES interview, this was an innocent mistake, or at most negligence, resulting from Gregory receiving information from multiple sources.  *See* Exhibit 1.  The incorrect portion of the statement was not material, however.  Gregory acted in good faith in providing information in the affidavit that he believed to be true, and did not attempt to mislead the magistrate.

There exists "a presumption of validity with respect to the affidavit supporting the search warrant."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  Where a defendant claims that an affidavit in support of a search warrant contains false information, the defendant bears the burden of making a "substantial preliminary showing that:  1) the affidavit contains intentionally or recklessly false statements, and 2) the affidavit cannot support a finding of probable cause without the allegedly false information."  *United States v. Valencia*, 24 F.3d 1106, 1109 (9th Cir. 1994), *Franks*, 438 U.S. at 171.  The *Franks* Court explained this burden, in part, as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . Allegations of negligence or innocent mistake are insufficient. . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. at 171-172.  Thus, even if intentionally or recklessly false information is presented in a search warrant affidavit, "[t]hat fact does not end the inquiry whether there was probable cause. .

. because suppression is required only if the remaining evidence is insufficient to establish probable cause." *Payton*, 573 F.3d at 861.

A finding of recklessness requires a showing that the affiant had a "high degree of awareness of probable falsity." *United States v. Senchyenko*, 133 F.2d 1153, 1158 (9th Cir. 1988). Omissions or misstatements resulting from negligence or mistake will not invalidate an affidavit, which on its face establishes probable cause. *Ewing v Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). Innocent mistakes, erroneous assumptions, or negligence are insufficient to show a "reckless inclusion of false statements." *Franks*, 438 U.S. at 171; *United States v. Miller*, 753 F.2d 1475 1478 (9th Cir. 1985); *United States v. Smith*, 588 F.2d 737, 739 (9th Cir. 1979).

The Defendant alleges Gregory included three false statements in the second affidavit. The Government will address these in turn. The Defendant first attacks the affidavit's statement that H.H. stated in the CARES interview that she deleted three pictures of her naked "the last time she was at Roger's residence." The Defendant claims that H.H. did not indicate that this occurred "the last time." A review of the CARES interview transcript (Exhibit 2), shows that the affidavit's statement is true, or at least is a reasonable inference summarizing what H.H. said.

During the questioning of H.H., the CARES interviewer asked open-ended questions of H.H. After H.H. provided significant detail about the Defendant's abuse, the interviewer asked "[t]ell me everything that happened the very last time this happened." *See* Exhibit 2, page 12. H.H. responded, "it's still happening." The interviewer then asked, "[s]o the last time that Roger did this, tell me everything that happened that time." *Id*. In response, H.H. described the Defendant's abuse, including making her watch movies. *Id*. H.H. described the abuse for ten pages of the interview transcript. The interviewer then asked her, "you said something about the last time, that there was something that he was watching that you didn't like." *Id*. at 23. H.H.

responded, "Uh-huh.  There was a couple of movies."  *Id.*  The interviewer then stated, "Tell me more about those movies."  H.H. then described the movies for approximately one page, after which the interviewer asked, "How about you?  Are there any pictures of you anywhere?"  *Id.*  H.H. then described the three photos that the Defendant took of her, and that she deleted.

The CARES transcript shows that H.H. was referencing "the last time" she was at the Defendant's house when she was discussing the photos.  The question about "the last time" occurs one page before she described the photos, which would have been shortly before her answer.  The line of questioning did not change.  It is reasonable to interpret H.H.'s answer regarding the photos as referring to the last time she was the Defendant's house.  At the very least, this was a reasonable inference from the interview, and one the officer was entitled to make.  *See Ornelas*, 517 U.S. 690 ("a police officer may draw inferences based on his own experience in deciding whether probable cause exists").  The attached affidavit of J.R. Gregory establishes that he believed this statement to be true based upon his understanding of the CARES interview.  *See* Exhibit 1.  The statement in the affidavit that H.H. stated she deleted the photos "last time she was at Roger's residence" is neither intentionally nor recklessly false.

The Defendant's second claim of false statements is the sentence that reads "H.H. made the statements that there could be more picture (sic) of her naked."  The Defendant claims that H.H. did not make this statement in the CARES interview.  However, the June 11, 2013 affidavit does not indicate that she made the statement in the CARES interview, only that she made the statement.  J.R. Gregory's supporting affidavit states that he specifically recalls receiving information that H.H. stated, "there may have been more photos that she did not delete because she didn't want to get caught."  Exhibit 1, paragraph 20.  Gregory believed this statement to be true at the time he prepared the affidavit, based upon information that he received during his

investigation.   He did not indicate the source of that statement in the affidavit in support of the search warrants.  Given that he received that information during his investigation, it clearly cannot be intentionally or recklessly false.

Finally, the Defendant claims that the statement that H.H. stated in the CARES interview that she deleted three pictures of her naked "from the computer" is false.  H.H. stated in the CARES interview that she deleted the photos from the Defendant's phone, not his computer.  In that sense, the Defendant is correct that this information is false.  However, the circumstances surrounding the statement clearly indicate that J.R. Gregory made an innocent or negligent mistake, rather than an intentional or reckless false statement.

As explained in his affidavit, J.R. Gregory received statements made by H.H. from S.T., L.T., and H.H., in addition to the CARES interview.  *See* Exhibit 1, ¶ 18.  During his investigation, he received information that H.H. had deleted photos from the Defendant's computer.  He mistakenly attributed this statement to the CARES interview.  The Defendant alleges that Gregory fabricated this statement in an effort to provide additional probable cause for a forensic search of the computers.  He cites no evidence in support of this claim.  Given the significant amount of information in Gregory's search warrant affidavits about digital evidence, and his submission in the first affidavit that probable cause existed to seize and search digital devices, he lacked a motive to fabricate the statement.

Gregory's lack of motive to fabricate this statement is also established by the fact that he received additional information about the Defendant's use of computers.  *See* Exhibit 4 at 6:07 – 6:55.  In his May 28, 2013 contact with H.H., she told Gregory that she had seen pictures and videos like the ones found printed out at the Defendant's residence, on the Defendant's computer. Had Gregory believed that he needed additional information involving computers to bolster his

probable cause, he would not have needed to fabricate information.  Rather, he simply could have included H.H.'s statement that the Defendant showed her movies and pictures on his computer.  This evidence weighs strongly against the Defendant's claim that Gregory fabricated the statement about H.H. deleting photos from a computer to develop additional probable cause for a search of computers.  It also shows that he was receiving statements from H.H. about computers separate from the CARES interview.

The Defendant's claim of fabrication is also contradicted by Gregory's affidavit, which indicates that he believed the statement to be true at the time he prepared the affidavit because he had received this information during his investigation.  Gregory's statement that he received information that H.H. deleted photos from the Defendant's computer is corroborated by his documentation of the same in 2013.  *See* Exhibit 1, attachment B.  In the bulleted list provided to Agent Morse in November of 2013, Gregory specifically noted that H.H. had stated that she deleted photos from the Defendant's phone *and* computer.

Thus, the only allegation that withstands scrutiny is that H.H. did not use the word "computers" during the CARES interview, but rather made the statement in another context.  There is no evidence to suggest that Gregory intentionally, or even recklessly, presented this information.  Rather, he simply made a mistake in the haste of a fast-moving criminal investigation.  This mistake is the result of receiving multiple statements made by H.H. from multiple sources, including H.H. herself, which discussed photos, phones, and computers.  There is no indication that he had a motive to fabricate this information, and thus the mistake is innocent, or at most negligent.  It does not rise to the level of an intentional or reckless falsehood that should invalidate the warrant.

The context of H.H.'s statement is arguably immaterial, given the significant amount of information she provided about the Defendant's abuse, and the fact that her statements were corroborated by evidence found at the Defendant's residence.  In other words, who H.H. made the statement to is not important.  Therefore, if this Court excises the portion of the statement that is arguably false – that she made the statement in the CARES interview – the statement that she deleted photos from the Defendant's computer is still relevant to probable cause.  As explained above, even if the Court excises the entire statement, probable cause for the warrant still existed.  Under either analysis, the Defendant's challenge to the June 12, 2013 search warrants fails, as the forensic search of his electronic devices, authorized by a neutral and detached magistrate, complied with the Fourth Amendment.

### III. The November 12, 2013 seizure of the Defendant's vehicle in the District of Utah was objectively reasonable.

   a. The seizure was supported by probable cause to believe the vehicle was evidence of, and contained evidence of, both state and federal crimes.

The Defendant's Fourth Amendment rights were not violated by the seizure of his vehicle in the District of Utah.  The seizure was supported by probable cause to believe the vehicle was evidence of the Defendant's flight from prosecution in the District of Idaho, and that it contained evidence of his flight from prosecution, his sexual abuse of H.H., and his possession of firearms in violation of federal law.  Based on the information known to law enforcement at the time of the seizure, it was reasonable to seize the vehicle and seek a warrant for a search of its contents.

The Fourth Amendment does not require police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. *See California v. Carney*, 471 U.S. 386, 392-93 (1985).  This "automobile exception" to the warrant requirement is justified because of the inherent mobility of vehicles and the reduced

expectation of privacy therein.  *See Carroll v. United States,* 257 U.S. 132, 153 (1925), *Carney*, 471 U.S. at 392.  A warrantless seizure of a vehicle, based upon probable cause that the vehicle is evidence of a crime, falls within the automobile exception.  *See United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985), *Cardwell v. Lewis*, 417 U.S. 583, 592 (1974).  A determination of probable cause is based on the totality of the circumstances known to officers, including the "collective knowledge of all the officers involved in the criminal investigation."  *United States v. Ramirez*, 473 F.3d 1026, 1032-37 (9th Cir. 2007).

At the time the officers seized the Defendant's vehicle, probable cause existed to believe that the Defendant had sexually abused H.H., and that he had possessed digital evidence of that abuse.  Officers knew that the Defendant possessed a large number of electronic devices, as fourteen electronic devices were seized from his residence on May 24, 2013, and a phone belonging to the Defendant was taken from H.H. on May 28, 2013.  Officers also knew the following:

- The Defendant had fled the District of Idaho with the knowledge that he had been criminally charged with the sexual abuse of H.H. in Idaho state court, and that a warrant had issued for his arrest.
- That the Defendant stated he might flee to Mexico or Hawaii.
- The Defendant had, prior to fleeing Idaho, switched vehicles with a neighbor, and did not register the vehicle in his name.
- The Defendant had, prior to fleeing Idaho, obtained possession of two firearms before entering the vehicle and fleeing the location where he was staying.

Based upon the totality of the circumstances known to the officers at the time of the seizure, probable cause existed to believe that the Defendant's vehicle was evidence of his flight from prosecution in Idaho.  The Defendant's flight from prosecution in Idaho is relevant to his consciousness of guilt related to the Idaho charges.  *See United States v. Silverman*, 861 F.2d

571, 581 (9th Cir. 1988), *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999).  The Defendant knew that he had been charged with the sexual abuse of H.H. in Idaho, that a warrant was issued for his arrest, and that law enforcement officers were looking for him.  With that knowledge, the Defendant armed himself and fled the State of Idaho in the vehicle he obtained from his neighbor that was not registered in his name.  In addition to constituting relevant evidence of his guilt of the sexual abuse charges in state court, the Defendant's interstate flight to avoid prosecution also constituted a federal violation of 18 U.S.C. § 1073.

Based upon the Defendant's flight from prosecution in Idaho, officers possessed probable cause to seize his vehicle as evidence.  Additionally, probable cause existed to believe that evidence of the Defendant's flight from prosecution would be found in his vehicle.  A reasonable probability existed that evidence showing that he had packed bags with clothing, that he had taken personal possessions with him, and evidence showing his intent to flee Idaho and reside elsewhere was likely to be located in his vehicle.

Officers also had probable cause to believe that the Defendant's vehicle would contain firearms.  Contrary to the Defendant's argument, his possession of firearms would have been a violation of federal law.  Under 18 U.S.C. § 922(g)(2), it is unlawful for a fugitive from justice to transport a firearm or ammunition in interstate commerce.  Officers received information from Carl Fillmore, the Defendant's stepdad with whom he lived, that the Defendant had obtained two firearms prior to entering his vehicle and fleeing Idaho.  Further, Deputy U.S. Marshal Arnes observed what he believed to be a rifle case in the rear passenger area of the vehicle, prior to the vehicle's seizure.

Officers also possessed probable cause to believe that digital evidence of the abuse of H.H. would be found in the vehicle.  The facts establishing this probable cause are detailed in

Gregory's May 24 and June 12, 2013 affidavits, and are analyzed above.  Deputy Arnes observed a laptop computer in plain view in the Defendant's vehicle.  Coupled with the information Gregory obtained during his investigation regarding the Defendant's possession of digital evidence of his abuse of H.H., probable cause existed to believe that the computer contained this digital evidence.

Contrary to the Defendant's argument, this probable cause was not dissipated by the seizure of electronic devices from the Defendant's residence.  The fact that officers seized such a large amount of electronic devices shows that the Defendant possessed many electronic devices. The Defendant was not present during the service of the search warrant at his residence, and his vehicle was not searched.  There was no evidence that officers seized every device he owned, but rather, evidence existed that officers did not seize all of his electronic devices during the search warrant.  Officers later located a phone belonging to the Defendant in H.H.'s possession.  Under the circumstances, it was reasonable to infer that the Defendant would possess additional electronic devices that contained evidence of the abuse of H.H.  The nature of digital evidence furthers this probable cause.  Digital files are easily transferred between electronic devices, and can be done so wirelessly without the need physically to connect the devices.  Further, unlike drugs or other fungible evidence, digital evidence does not dissipate over time.  Evidence of digital files can be discovered even after the files are deleted.

The Defendant argues that Deputy Arnes' plain view observation of a laptop computer in the vehicle is a false statement, and that he could not see in the vehicle.  The Defendant has no evidence that Arnes falsified this statement, and provides no motive for him to do so.  Deputy Arnes had no motive to falsify this information, as his involvement in the investigation was limited to arresting the Defendant as a fugitive.  Additionally, two photographs corroborate his

statement.  First, the photograph taken from the exterior of the Defendant's vehicle, looking

through the rear passenger window, corroborates his statement that he could see into the vehicle.

*See* Exhibit 15.  This photograph was attached to the November 27, 2013 search warrant

affidavit.  Second, the photograph taken during the service of the search warrant, showing the

rear passenger seat area of the vehicle, corroborates his statement that a laptop computer, with

electronic ports, was clearly visible.  *See* Exhibits 6, 10.  The Defendant's allegation is meritless.

The officers possessed probable cause to seize the Defendant's vehicle.  Arguably, the

officers could have searched the vehicle at the scene under the automobile exception.  In an

abundance of caution, they chose to seek a warrant.  This is what the Fourth Amendment prefers,

and was reasonable under the totality of the circumstances.

> b.  The fifteen day delay between the seizure of the vehicle, and the service of a
> search warrant authorizing a search of the vehicle, was objectively reasonable.

Officers obtained a federal search warrant fifteen days after seizing the Defendant's

vehicle based upon probable cause to believe that it was evidence of a crime, and that it

contained evidence of a crime.  As noted above, the officers could have searched the vehicle at

the scene.  Instead, they seized the vehicle and secured it until a search warrant could be

obtained.  The search warrant required the involvement of multiple state and federal law

enforcement agencies, and the U.S. Attorney's Office, in two jurisdictions.  Its preparation

included consultation with two federal prosecutors, and a forensic interview of the victim by an

FBI specialist who had to travel from out of state.  Under the totality of the circumstances, a

fifteen day delay in obtaining the warrant was reasonable.

An unreasonable delay between a seizure and obtaining a search warrant may violate a

defendant's Fourth Amendment rights.  *See United States v. Sullivan*, 753 F.3d 845, 856 (9th Cir.

2014).  The touchstone is reasonableness.  *See id.*  Determining whether a delay is reasonable is

made on a case-by-case basis under the totality of the circumstances, not whether the

Government pursued the least intrusive course of action.  *See id.* (citing *United States v.*

*Hernandez,* 313 F.3d 1206, 1208 (9th Cir. 2002), *United States v. Van Leeuwen*, 397 U.S. 249,

252-253 (1970)).  The Court should balance "the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the importance of the governmental interests

alleged to justify the intrusion."  *United States v. Place*, 462 U.S. 696, 703 (1983).

Because the officers had probable cause to seize the vehicle as evidence, any delay in

obtaining the search warrant would not constitute a violation of the Defendant's Fourth

Amendment rights.  Having lawfully seized the vehicle as evidence, the Government could retain

possession of the vehicle so long as "the government's need for the property as evidence

continues."  *See United States v. Fitzen*, 80 F.3d 387, 388 (9th Cir. 1996).  The Defendant's

remedy for reclaiming property seized as evidence is to file a motion under Federal Rule of

Criminal Procedure 41(e).  The Defendant made no such motion for a return of his vehicle.

Under the totality of the circumstances, the extent of the intrusion on the Defendant's

possessory interest in the vehicle was minimal.  The Defendant was incarcerated during the

fifteen days, could not make use of the vehicle, and made no request for the return of the vehicle.

*See Sullivan*, 753 F.3d at 856 ("Where individuals are incarcerated and cannot make use of

seized property, their possessory interest in that property is reduced.").  Additionally, individuals

have a reduced expectation of privacy in vehicles.  *See Carney*, 471 U.S. at 392.  For Fourth

Amendment purposes, vehicles are treated differently than houses.[7]

---

[7] The Defendant's analysis under *Illinois v. McArthur* and *Song Ja Cha* is inapplicable, as each address the
reasonableness of a delay in seeking a search warrant after seizing a residence.  His citation to *Camou, Johns,* and
*Albers* are equally inapplicable, as they each involved warrantless searches.

*GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS - 40*

The seizure and retention of the Defendant's vehicle was necessary for legitimate law enforcement interests.  Officers possessed probable cause to believe that the vehicle was evidence of a crime, and contained evidence of a crime.  The vehicle was seized in Utah, while jurisdiction for most of the criminal activity was in Idaho.  The officers conducting the arrest of the Defendant, and the seizure of his vehicle, did not possess all of the information necessary to obtain the search warrant.  Thus, seizing the vehicle until Idaho law enforcement could seek a search warrant promoted legitimate law enforcement interests, and was reasonable under the totality of the circumstances.

Finally, law enforcement officers acted diligently in obtaining a warrant.  The Defendant's claim that officers waited until November 26, 2013 to begin working on the search warrant is false.  Gregory first attempted to obtain an Idaho state warrant on November 13, the day after the seizure.  When informed by his prosecutor that he could not obtain a warrant for property in Idaho, he sought assistance from federal law enforcement officers.  After the U.S. Marshal's Service in Idaho indicated that they could not assist in obtaining a warrant, FBI Agent Morse agreed to assist and draft the affidavit.  Morse and Gregory met with Assistant U.S. Attorney Jim Peters on November 15.  Gregory provided his investigative materials, which were voluminous, for Morse to review.  Morse obtained photographs of the Defendant's vehicle on November 19, sought Grand Jury subpoenas on November 22, contacted an FBI agent in Utah to act as a local affiant, and scheduled a forensic interview of H.H., which took place on November 26.  Two federal prosecutors reviewed the affidavit on November 26 before it was presented to a federal magistrate judge on November 27.  A review of the affidavit shows that it was meticulously prepared and included a significant amount of new information gathered during the federal investigation.

The officers' course of conduct was reasonable under the totality of the circumstances, given the justifications for seizing the vehicle, the Defendant's incarceration during this time, the officers' interest in searching the vehicle, and the diligence with which a warrant was sought. "Even if the government could have moved faster to obtain a search warrant, the government is not required to pursue 'the least intrusive course of action.'" *Sullivan*, 753 F.3d at 856 (holding that "the government's seizure and retention of the laptop for 21 days before obtaining a search warrant was not an unreasonable seizure under the Fourth Amendment") (quoting *Hernandez*, 313 F.3d at 1213). The fifteen day delay in obtaining a search warrant for the Defendant's vehicle did not violate his Fourth Amendment rights.

**IV.**     **The November 27, 2013 search warrant affidavit did not contain any intentionally false or recklessly false statements that were material to the probable cause finding.**

This Court can dispose of the Defendant's claim of false statements in the November 27, 2013 search warrant by simply reviewing the affidavit in support of the search warrant. The affidavit establishes probable cause for a search of the vehicle absent the alleged false statements. As a result, the Defendant is not entitled to a *Franks* hearing, and his claim fails.

The Defendant alleges two false statements: (1) that H.H. stated, "there could be more pictures of her naked, and; (2) that Deputy Arnes saw a "laptop computer and rifle case in the back seat of the truck." The Defendant claims that the absence of these statements "lessens the probability that images could be found on the laptop in the truck." However, the affidavit contains three pages of statements from H.H. taken during a November 25, 2013 forensic interview by the FBI. These statements provide probable cause to search the Defendant's truck on their own, and render the alleged false statements immaterial.

The affidavit provided probable cause to believe the Defendant possessed digital evidence of his abuse of H.H. H.H. stated in the FBI interview that the Defendant asked her to

make a video at his house using a small camera next to his computer.  H.H. stated the Defendant instructed her to "rub her body against his and look in the camera."  *See* Exhibit 15, ¶ 40.  H.H. also stated the Defendant "forced her to take a picture on the camera of her privates."  *Id.*

Attached to the search warrant affidavit were several photographs of the Defendant's vehicle, taken from the outside of the vehicle by the Unified Police Department of Greater Salt Lake.  *See* Exhibits 9, 15.  One of the photographs depicts the interior of the passenger compartment of the vehicle from outside of the rear passenger window.  Clearly visible on the rear seat is a laptop computer bag.  The affidavit in support of the November 27, 2013 search warrant indicates that H.H. was shown this photograph.  *See* Exhibit 15, ¶ 42.  She identified the bag as "the bag in which Wilkinson kept the computer with an apple."  As detailed in the affidavit, H.H. explained that the Defendant used the computer with an apple to "show her various pornographic videos," that he made her watch videos that he obtained on the internet of "children being whipped with sticks and ropes," that he would type in "sex videos" to make the videos come on the screen, and that he showed her "bad videos of naked women" while he abused H.H.  *Id.* at ¶ 38.

H.H. also identified a large bag inside the truck as belonging to the Defendant.  *Id.* at ¶ 42.  She stated that the Defendant kept "condoms, other dirty items, and the lotions" he "put on H.H."  *Id.*  The statements of H.H. in the affidavit established probable cause to search the Defendant's vehicle.  Thus, the statements that the Defendant alleges as false are immaterial and irrelevant.

In addition, the statements the Defendant attacks are true statements.  First, the Defendant alleges that paragraph 23 of the affidavit repeats Gregory's statements that H.H. deleted photos from a computer, and that there may be more photos of her naked.  However, as explained

above, Gregory did receive information that H.H. stated that she deleted photos from a computer, and that there could be more photos of her naked.  H.H.'s statements in the FBI interview further corroborate this.  This statement is not intentionally or recklessly false.

Second, the Defendant claims as false the statement in paragraph 28 of the affidavit that Deputy Arnes "noted in plain view a lap top computer and a rifle case in the back seat" of the Defendant's vehicle.  This statement was not false, as Deputy Arnes was able to see in the rear passenger window of the Defendant's vehicle and observe objects inside, including a laptop computer and a possible rifle case.  *See* Exhibit 6.  The photograph taken from the outside of the Defendant's vehicle on November 15, 2013 corroborates his statement that he could see through the window.  *See* Exhibit 9.[8]  Although the Defendant states that this photograph "depicts only a black case," the angle of the photograph does not depict everything that would be visible in the interior of the vehicle.  The photo attached to Arnes' affidavit, taken during the service of the search warrant on November 27, 2013, shows the item which Arnes observed.  *See* Exhibit 6.  As he explains in his affidavit, it appears to be "a laptop computer in a partially open case," that "was the size and shape of a laptop computer, and had visible electronic ports on its side."  *Id.* Thus, Arnes' statement that he observed a laptop computer on the rear seat of the Defendant's vehicle is a true statement, corroborated by photographs taken near the time he made the observation.  Its inclusion in the affidavit did not represent an intentional or reckless false statement that would invalidate the warrant.

---

[8] The Defendant's claim that the November 27, 2013 affidavit falsely represented what is depicted in this photograph is contradicted by the fact that the photograph was attached to the affidavit.

*GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS - 44*

## <u>CONCLUSION</u>

The Defendant's motion should be denied.  The officers did exactly what the Fourth

Amendment prefers: they sought and received judicial approval of the searches from neutral and

detached magistrates.  The searches pursuant to the three search warrants did not violate the

Defendant's Fourth Amendment rights.


Respectfully submitted this 9th day of February, 2015.


WENDY J. OLSON
UNITED STATES ATTORNEY
By:


*/s/ Justin D. Whatcott*
JUSTIN D. WHATCOTT
ASSISTANT U.S. ATTORNEY

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>9th</u> day of February, 2015, the foregoing

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION**

**TO SUPPRESS** was filed electronically through the CM/ECF system, which caused the

following counsel to be served by electronic means, as more fully reflected on the Notice of

Electronic Filing:

> Thomas Monaghan
> Federal Defender Services of Idaho
> 702 West Idaho Street, Suite 1000
> Boise, ID  83702
> Thomas_Monaghan@fd.org

<u>/s/*Barbara Layman*</u>
Legal Assistant