WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM R. WILKINSON,<br><br>Defendant. | Case No. CR-14-168-S-EJL<br><br>**UNITED STATES OF AMERICA'S MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM**<br><br>*Redacted Pursuant to 18 U.S.C. § 3509(d)(2)* |

The United States of America, by and through Wendy J. Olson, United States Attorney for the District of Idaho, and Justin D. Whatcott and Joshua D. Hurwit, Assistants United States Attorney, hereby moves *in limine* for a ruling that two separate interviews of the child victim in this case are admissible at trial (the "Motion").

Through this Motion, the Government provides notice to the Defendant pursuant to Federal Rule of Evidence 807(b) that it intends to introduce into evidence at trial the interviews

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 1**

discussed below.

## INTRODUCTION

The Defendant is charged with producing and possessing images depicting         engaged in sexually explicit conduct (among other charges).  This conduct was part of a long history of sexual abuse that began when            years old or younger.  On May 12, 2013, when          , she disclosed Defendant's abuse to her mother, and her family contacted law enforcement.  Law enforcement set up a forensic interview of the victim at Children at Risk Evaluation Services in Twin Falls, Idaho ("CARES").[1]  On May 22, 2013—nine days after          disclosed the abuse to her mother—CARES Forensic Interviewer Teema Boies Loeffelholz interviewed H.H. (the "CARES interview").  Subsequently, on November 25, 2013, FBI Child Adolescent Forensic Interviewer Rachael Happel interviewed         (the "FBI interview").[2]  The Government intends to introduce video recordings of both the CARES interview and the FBI interview at trial.  In its Motion *In Limine* To Admit Other Acts Evidence (ECF No. 81) (the "Other Acts Motion"), the Government demonstrated that       's statements during these interviews are relevant as direct evidence inextricably intertwined with evidence of the Defendant's guilt and also are admissible "other acts" evidence under Federal Rules of Evidence 404(b) and 414(b).  In this Motion, the Government addresses any potential hearsay objection to this evidence.

The CARES interview and the FBI interview should be admitted under the residual

---

[1]    The video recording of the CARES interview is attached hereto as Exhibit A, and the transcript is attached hereto as Exhibit B.

[2]    The video recording of the FBI interview is attached hereto as Exhibits C & D, and the transcript is attached hereto as Exhibit E.

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 2**

hearsay exception (Federal Rule of Evidence 807) and as a prior consistent statement exempt from the hearsay rule (Rule 801(d)(1)(B)(ii)).

*First*, the recordings of the interviews satisfy all the necessary conditions of the residual hearsay exception and have the "guarantees of trustworthiness" that courts have relied on to admit similar victim statements in child abuse cases. These include the training of the interviewers, the use of open-ending questions, the child-like language that        used, the proximity in time of the interviews to the abuse, and the consistency of        's statements during the interviews.

*Second*, the recordings are admissible under Rule 801(d)(1)(B)(ii) because they are        's prior consistent statements that will be used to rehabilitate her credibility. The Government will call        as a witness at trial and will elicit from her the story of abuse that she recounted in the CARES interview and the FBI interview. Because the Defendant is expected to cross-examine her about this testimony, Rule 801(d)(1)(B)(ii) applies. The interviews will rehabilitee        's credibility by showing the jury that her statements about the Defendant's abuse in the interviews are consistent with her trial testimony.

For these reasons, the Court should rule that there are no hearsay barriers to introducing the CARES interview and the FBI interview at trial.

## FACTUAL BACKGROUND[3]

Forensic Interviewer Teema Loeffelholz conducted the CARES interview on May 22, 2013, slightly more than a week after        had disclosed the Defendant's abuse to her mother. Ms. Loeffelholz completed training in a National Institute of Child Health and Human

---

[3] H.H.'s statements during the CARES interview and the FBI interview are summarized at pages 4-5 in the Other Acts Motion.

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 3**

Development ("NICHD") course, as well as other training, and conducted forensic interviews for a ten-month period in from October 2012 to August 2013.[4]  During this time, she completed approximately 130-150 forensic interviews.  Ms. Loeffelholz conducted the interview of         according to NICHD protocol.  She asked non-leading open-ended questions.  She also allowed for         to draw diagrams and pictures of the Defendant's abuse.  In describing what happened to her,         used age-appropriate language, including "mushroom" (to describe the Defendant's penis), "first private" (to describe her vagina), "bum-bum," "bad things," and "really gross."

The FBI interview shares these same features.  FBI Child Adolescent Forensic Interviewer Rachael Happel has worked for the FBI since 2012, has years of experience in the field prior to 2012, and has interviewed approximately 1,600 children in her career.[5]  She has attended several trainings and conferences regarding forensic interviews of child abuse victims and has even taught on the subject.  She conducted the interview according to FBI protocol, asking open-ended questions and allowing        to draw pictures of the abuse that she was describing.  During this interview        again used the same type of age-appropriate language that she had used during the CARES interview.  She described the Defendant's abuse in the same manner.

## LEGAL BACKGROUND

*Rule 807*

Federal Rule of Evidence 807(a) provides:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by

---

[4]   Ms. Loeffelholz's curriculum vitae is attached hereto as Exhibit F.

[5]   Ms. Happel's curriculum vitae is attached hereto as Exhibit G.

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 4**

>a hearsay exception in Rule 803 or 804:
>
>(1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
>(2) it is offered as evidence of a material fact;
>
>(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
>(4) admitting it will best serve the purposes of these rules and the interests of justice.

"While courts have restricted application of this rule to extraordinary circumstances, courts have specifically employed the residual exception in child abuse litigation to admit hearsay statements of the victims." *Siuda ex rel Siuda v. United States*, No. CIVS03-2439 FCD/KJM, 2006 WL 335460, at *5 (E.D. Cal. Feb. 20, 2006) (citing, *e.g.*, *United States v. Harrison*, 296 F.3d 994, 1004 (10th Cir. 2002), *United States v. Dunford*, 148 F.3d 385, 392 (4th Cir.1998), and *Doe v. United States*, 976 F.2d 1071, 1075 (7th Cir. 1992)).

In these cases, courts use a variety of factors to determine whether the statements have "circumstantial guarantees of trustworthiness," which is frequently the Rule 807 requirement being litigated. In *United States v. Thunder Horse*, 370 F.3d 745 (8th Cir. 2004), the Eighth Circuit held that a child victim's statements to a forensic examiner affiliated with a child advocacy center were admissible pursuant to Rule 807. The court considered the following factors:

>[1] the training and experience of the interviewer; [2] whether the child was interviewed using open-ended questions; [3] the age of the child and whether the child used age-appropriate language in discussing the abuse; [4] the length of time between the incident of abuse and the making of the hearsay statement; and [5] whether the child repeated the same facts consistently to adults.

*Id.* at 748 (citing *United States v. NB*, 59 F.3d 771, 776 (8th Cir.1995)). These factors, however,

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 5**

are not necessarily exhaustive. Indeed, prior to *Crawford v. Washington*, 541 U.S. 35 (2004), the Supreme Court adopted a "totality of the circumstances" approach to determine whether a victim's prior statements had sufficient indicia of trustworthiness to overcome the fact that the victim was unable to testify.[6] *Idaho v. Wright*, 497 U.S. 805, 819 (1990).

*Rule 801(d)(1)(B)(ii)*

Under Rule 801(d)(1)(B)(ii), a witnesses' prior consistent statement is not hearsay if the statement is used "to rehabilitate the declarant's credibility" and the witness "testifies and is subject to cross examination about [the prior] statement." This Rule is a recent amendment to the Federal Rules of Evidence. Previously, Rule 801(d)(1)(B) exempted from the hearsay rule only a prior consistent statement offered "to rebut an express or implied charge that the declarant recently fabricated [a statement] or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801(d)(1)(B)(i). Rule 801(d)(1)(B)(ii) extends the exemption "to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory." Fed. R. Evid. 801, Notes of the Advisory Committee on Proposed Rules (2014 Amendments). Thus, no matter how a witness' credibility is attacked, prior consistent statements are admissible so long as the witness is available for cross-examination.

---

[6] After *Crawford*, a declarant must be available for cross-examination even if his statement has sufficient indicia of trustworthiness. But, in this case, the Court need not engage in a Confrontation Clause analysis because         will testify at trial. *See NB*, 59 F.3d at 776 ("When there are no Confrontation Clause implications, we analyze children's hearsay testimony for admissibility under [Rule 807.]").

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 6**

**ARGUMENT**

I. **Both The CARES Interview And The FBI Interview Are Admissible Under Rule 807.**

Both the CARES interview and the FBI interview should be admitted under Rule 807. First, as compared with live testimony, the interviews have "equivalent circumstantial guarantees of trustworthiness" as required by Rule 807(a)(1). The interviews satisfy the factors that courts have relied on to admit victim statements in similar cases:

- Both Ms. Loeffelholz and Ms. Happel have years of experience interviewing child abuse victims and significant training in this field. *See NB*, 59 F.3d at (admitting testimony of social workers regarding victim statements in part because "all the social workers had extensive experience in interviewing abused children"); *United States v. Grooms*, 978 F.2d 425, 427 (8th Cir. 1992) (finding no abuse of discretion in admitting statements where "the statements were made to an FBI agent with special training in interviewing child victims"); *Siuda ex rel Siuda*, 2006 WL 335460, at *5 (admitting statements where the children "were questioned by . . . a 12 year veteran [] investigator who had received special training in forensic interviewing of child abuse victims").

- Both Mr. Loeffelholz and Ms. Happel used open-ended questions in eliciting          s story. *See United States v. Peneaux*, 432 F.3d 882, 892 (8th Cir. 2005) (admitting testimony where the interviewers used "open-ended questions"); *NB*, 59 F.3d at 777 (same); *Grooms*, 978 F.2d at 427 (same).

- In speaking with both Mr. Loeffelholz and Ms. Happel,          used age-appropriate language, which indicates that her statements were spontaneous and not rehearsed or

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 7**

fed to her by an adult. Similarly ____ drew pictures of the abuse and objects that she was describing (or made illustrations on diagrams). The interviewers did not tell her what to draw specifically or how to draw it. *See Peneaux*, 432 F.3d at 892 (finding that victim statements were admissible where the victim "used language appropriate for a young child in talking about the abuse, she circled the parts of her body that Peneaux had touched on an anatomically correct diagram"); *NB*, 59 F.3d at 777 (same); *United States v. DeCoteau*, No. 4:08–cr–037, 2010 WL 148373, at *3 (D.N.D. Jan. 10, 2010) (admitting forensic interviews where the victim "used age-appropriate language to discuss the alleged sexual abuse").

- The CARES interview was approximately a month after the last incident of abuse and nine days after ____'s first disclosure. *See Siuda ex rel Siuda*, 2006 WL 335460, at *6 (finding trustworthiness where the statements were taken "within days, if not at the longest, within approximately a month" of abuse). While the FBI interview occurred six months after the CARES interview, the fact that ____'s statements in the FBI interview were consistent with the CARES interviews makes the lapse in time less significant. *Cf. State v. Sorenson*, 421 N.W.2d 77, 86 (Wis. 1988) ("Contemporaneity and spontaneity of statements are not as crucial in admitting hearsay statement of young sexual assault victims under the residual exception.").

- As noted, ____'s statements to both interviewers were consistent—and remarkably so. (*See* Other Acts Motion at 4-5); *United States v. Harrison*, 296 F.3d 994, 1004 (10th Cir. 2002) (finding the consistency of the child abuse victim's prior statements to an FBI agent about the sexual abuse by the defendant sufficient to establish their "trustworthiness," even though the victim subsequently recanted her statements);

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 8**

*United States v. Dunford*, 148 F.3d 385, 392 (4th Cir. 1998) (emphasizing the repetition and consistency of teenage abuse victims' statements about their father to government officials); *Siuda ex rel Siuda*, 2006 WL 335460, at *6 (admitting statements to adults where the children "repeated their statements, at least in part, to parents and physicians/therapists").

For these specific reasons—not to mention under a "totality of the circumstances" approach—the CARES interview and the FBI interview satisfy Rule 807(a)(1).

Second, under Rule 807(a)(2), the interviews are "evidence of a material fact"—namely the Defendant's sexual abuse of      which is inextricably intertwined with the charged child pornography offense and is also evidence of his motive, intent, and opportunity for committing those crimes. In addition, in the FBI interview,      discussed the specific items (e.g., computers, iPhones) that the Defendant used to perpetrate the crimes alleged in the Indictment.[7] The Government has elaborated on these points in its Other Acts Motion.

Third, the interviews satisfy Rule 807(a)(3) because      's statements during these interviews are "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts." The interviews (especially the CARES interview) happened months after the alleged abuse (and production of child pornography). It will be two years later when      testifies at trial. Accordingly, the interviews are more probative of the Defendant's abuse than      's current recollection (although, as explained below, the Government does not expect that      will have trouble remembering what the Defendant did to her). *See Siuda ex rel Siuda*, 2006 WL 335460, at *6 ("The videotapes are

---

[7]   The "Indictment" refers to the Second Superseding Indictment (ECF No. 36).

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 9**

arguably the most probative evidence on the issue of abuse since the statements were made close in time to the alleged events, rather than five years later.").

Fourth, under Rule 807(a)(4), admitting the interview recordings "will best serve the purposes of these rules and the interests of justice." The purposes of the rules of evidence will be served because, as noted, the circumstances surrounding the interviews reflect at least five recognized indicia of trustworthiness. Additionally, the jury will not only hear      's statements, but also will be able to see her demeanor in the videos and judge her credibility accordingly. The interests of justice will be served because the interviews are key evidence. (*See* Other Acts Motion.) Finally, admitting the interview recordings will not present Confrontation Clause or due process issues.      will testify and be subject to cross-examination. And Defendant has had the interview recordings for over a year and so will have had ample time to prepare to cross-examine      about her statements during the interviews.

## II.      The CARES Interview And The FBI Interview Will Be Admissible As Prior Consistent Statements Once      's Credibility Is Challenged.

    's testimony will be the key event at trial. She is expected to identify the images that form the basis for Counts One through Three, which charge the Defendant with producing sexually exploitative images of      Further, as explained in the Government's Other Acts Motion,      will testify about Defendant's other sexual abuse and "grooming" behavior that is inextricably intertwined with the charged offenses and demonstrates his motive, intent, and opportunity for committing these crimes. To defend their client, the Defendant's counsel

presumably will challenge      's credibility.[8]  In turn, the CARES interview and the FBI interview will be prior consistent statements that will rehabilitate      's credibility and therefore are admissible under Rule 801(d)(1)(B)(ii).

Courts have admitted victim statements in similar circumstances.  In *United States v. Gonzalez*, 533 F.3d 1057 (9th Cir. 2008), the Ninth Circuit found that the district court properly admitted a police officer's testimony about a sexual assault victim's story.  *Id.* at 106.  The victim had been cross-examined about her allegations and so the "officer's account of her story was properly admissible rebuttal under Rule 801(d)(1)(B)." *Id.*; *see also Portillo v. Adams*, No. CV 09–5630 VAP (MRW), 2011 WL 4383648*6 (C.D. Cal. Aug. 24, 2011) (finding no error in allowing witnesses to testify to child abuse victims' out-of-court statements because the testimony consisted of prior consistent statements and the victims testified and were cross-examined).  Here—assuming that the Defendant's counsel does challenge      's credibility—the CARES interview and the FBI interview are also "properly admissible rebuttal" under Rule 801(d)(1)(B)(ii).

Indeed, there is even greater reason to admit the CARES interview and the FBI interview than there was to admit the statements in *Gonzalez* and *Portillo*.  In those cases, the statements were relayed to the jury second-hand by witnesses other than the victims.  Here, the CARES interview and the FBI interview are video recordings of the victim's own disclosures of the Defendant's abuse.  The jury will be able to assess      's credibility by watching her during the videos of the interviews and comparing what they see to her demeanor and testimony during

---

[8]    If counsel attacks      's credibility in opening statements, the interviews are admissible any time after this point as prior consistent statements.  *See Mitchell v. Schriro*, No. CV–07–1041–PHX–FJM, 2008 WL 2397337, at *5 (D. Ariz. June 9, 2008).

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 11**

trial. In this circumstance, there is nothing unfair or unduly prejudicial about admitting the interviews.

## CONCLUSION

For the foregoing reasons, the Court should rule that the CARES interview and the FBI interview are admissible under Rule 807 and 801(d)(1)(B)(ii).

Respectfully submitted this 2nd day of October, 2015.

        WENDY J. OLSON
        United States Attorney

        */s/ Joshua D. Hurwit*
        JUSTIN D. WHATCOTT
        JOSHUA D. HURWIT
        Assistants United States Attorney

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM - 12**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 2, 2015, the foregoing **UNITED STATES' MOTION *IN LIMINE* TO ADMIT RECORDINGS OF INTERVIEWS OF CHILD ABUSE VICTIM** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Thomas Monaghan<br>Idaho Federal Defender Services of Idaho<br>702 W. Idaho, Suite 1000<br>Boise, Idaho 83702<br>*Thomas_Monaghan@fd.org* | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |

                                                     */s/ Barbara Layman*
                                                     Legal Assistant