WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-14-168-S-EJL |
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING** |
| WILLIAM R. WILKINSON, | |
| Defendant. | _Redacted Pursuant to 18 U.S.C. § 3509(d)(2)_ |

The United States of America, by and through Wendy J. Olson, United States Attorney

for the District of Idaho, and Justin D. Whatcott and Joshua D. Hurwit, the undersigned

Assistants United States Attorney, hereby respond to the Defendant's Motion in Limine and

Request for Daubert/Kumho hearing, filed on September 30, 2015.  (Dkt. # 82).  This Court

should deny the Defendant's motion.

## INTRODUCTION

H.H.'s testimony will include descriptions of sexual abuse the Defendant committed

against her over the course of several years.  The first time H.H. disclosed this abuse was when

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND
REQUEST FOR DAUBERT/KUMHO HEARING - 1**

she was ▮▮▮▮▮▮.  This disclosure occurred approximately two and a half years prior to the scheduled trial in this matter.  H.H.'s memory, motive, and credibility will be squarely at issue at trial.  As the Defendant noted in a recent pleading, his position is that H.H. fabricated the allegations of sexual abuse as a result of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮.  *See* Defense Response to Motion in Limine to Admit Recordings of Interviews of Child, at 9.  (Dkt # 90).

Based upon this proffered defense, the Government anticipates that the following issues related to H.H.'s testimony and credibility will be before the jury: (1) the timing of her disclosure; (2) the fact that she did not previously disclose sexual abuse committed by the Defendant; (3) her motive for disclosing the sexual abuse; (4) the fact that she denied the Defendant committed sexual abuse in the past, and; (5) any inconsistencies between her initial disclosure, any other prior statements, her testimony at trial, and the evidence at trial.

The jury in this case will understandably wonder why a child would not only fail to disclose sexual abuse, but deny abuse occurred, and desire to be with the abuser, even after the disclosure.  The jury will likely also question why a child could have difficulty remembering, or provide inconsistent descriptions about, such a traumatic event that occurred multiple times.  Absent personal experience with child sexual abuse, the average juror does not possess knowledge relating to the dynamics of child sexual abuse and the general emotional and behavioral characteristics of sexual abuse victims.  This information is important for the jury to understand and contextualize the evidence at trial, including H.H.'s testimony.

Mydell Yeager's testimony will help the jury in understanding the evidence and facts in issue relating to the subject of child sexual abuse.  Her testimony is based upon sufficient facts or data: her more than 33 years of experience counseling over 3,000 sexual abuse victims.  She has

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 2**

not employed any novel scientific techniques and methods, and her testimony is not based upon specific studies or other scientific proof.  Her expert testimony regarding general behavioral characteristics, based upon her professional experience, is reliable and admissible under F.R.E. 702.

Mydell Yeager's testimony will not include any opinion regarding whether H.H. is a sexual abuse victim, or whether the Defendant is a sexual abuse offender.  Indeed, Ms. Yeager has no knowledge of, or information about, the specific facts of this case.  Rather, her testimony will educate the jury on an issue that is outside the normal knowledge of the jury, and will assist the jury in understanding the evidence and determining facts in issue.  Based upon the proffered defense in this case, the probative value of this testimony is not substantially outweighed by the danger of unfair prejudice.  This Court should deny the Defendant's motion in limine without the necessity of a hearing.

**FACTUAL BACKGROUND**

██████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████████████

█████████████████.  L.T. had no reason to suspect any inappropriate contact between them, and made no allegations of inappropriate contact. ████████████████████████████████

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 3**



In 2011, the Defendant alleged that ███████████████████████ had inappropriately touched H.H.  During a CARES interview, H.H. denied any inappropriate contact with ███.  She also denied any inappropriate contact with the Defendant.  As a result of this allegation, ██████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████  On May 12, 2013, ████████████████████████

████████████████████████, H.H. disclosed to L.T. that the Defendant had been sexually abusing her.  H.H. described the abuse in a CARES interview on May 22, 2013.  During the CARES interview, H.H. said of the Defendant, "I really don't to go away from him because

███████████████████████████████████████

█████

    H.H.'s disclosure in May of 2013 led to the instant investigation.  Forensic examinations of the Defendant's computers, seized at his residence and from his vehicle, revealed photographs of the Defendant sexually abusing H.H. ███████████████████ on November 3, 2012 and

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 4**

December 9, 2012, and a video of the Defendant sexually abusing H.H. ████████

██████ on March 3, 2013.

## APPLICABLE LAW

A trial court has "broad latitude" in determining whether an expert's testimony is reliable

and in deciding how to determine the testimony's reliability.  *Mukhtar v. Cal. State Univ.*, 299

F.3d 1053, 1064 (9th Cir.2002) (*citing United States v. Hankey*, 203 F.3d 1160, 1167 (9th

Cir.2000)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143

L.Ed.2d 238 (1999).  Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the
> case.

Pursuant to Federal Rule of Evidence 702, District Courts perform a gatekeeping role to

determine whether expert testimony is sufficiently reliable to be presented to the jury.  *See*

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469

(1993) ("*Daubert I* "). Whether the expert is appropriately qualified, whether her testimony is

relevant, and whether her testimony is reliable are all distinct inquiries under Rule 702.  *See id.* at

591, 113 S.Ct. 2786 (noting that relevancy is distinct from reliability);  *Mukhtar*, 299 F.3d at

1066 n. 11 (noting that whether an expert is properly qualified is distinct from whether expert

testimony is reliable).

Rule 702 "contemplates a broad conception of expert qualifications."  *Thomas v. Newton*

*Intern. Enterprises*, 42 F.3d 1266, 1269 (9th Cir.1994). "As the terms of the rule state, an expert

may be qualified either by 'knowledge, skill, experience, training, or education.' "  *Id.* (quoting

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND
REQUEST FOR DAUBERT/KUMHO HEARING - 5**

Fed.R.Evid. 702).  Once qualified, an expert may testify within her area of expertise so long as the expert's testimony "is both relevant and reliable."  *Cooper*, 510 F.3d at 942 (citation omitted); *see also Daubert I*, 509 U.S. at 589, 113 S.Ct. 2786.  In carrying out this responsibility, a court has discretion and flexibility in determining what evidence is relevant, reliable, and helpful to the trier of fact.  *See United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir.1997)

The Ninth Circuit has articulated a two-prong analysis for admissibility of a qualified expert's testimony.  First, the proffered testimony must be reliable, i.e., the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir.1995) ("*Daubert II* ") (citation and quotation signals omitted).  Second, the testimony must be relevant, i.e., "it logically advances a material aspect of the proposing party's case." *Id*.  A court's determination of relevancy "must be 'tied to the facts' of [the] particular case.' " *Cooper*, 510 F.3d at 942 (quoting *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167) (internal quotation signals omitted).

In determining reliability, the focus is on the expert's "principles and methodology, not on the conclusions that they generate." *Daubert I*, 509 U.S. at 594–95, 113 S.Ct. 2786.  Rule 702 "demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Cooper*, 510 F.3d at 942 (quotations and citations omitted).  Although not an exclusive list, factors for a trial court to consider in determining reliability include: (1) whether the theory, technique or method used by the expert to form her opinion can or has been tested; (2) the known or potential rate of error in the expert's theory, technique or method; (3) whether the theory, technique or method has been subjected to peer review and publication; (4) whether there are standards controlling the theory,

technique or method's operation; and (5) the general acceptance of the theory, technique or method within the relevant community. *See id*. at 942–43; *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir.2005).

However, not all of these factors may be applicable in a given case. *Kumho Tire Co.*, 526 U.S. at 151, 119 S.Ct. 1167. For example, in cases involving drug trafficking or alien smuggling organizations, the Ninth Circuit has noted that an expert's training and experience may provide sufficient information to determine the reliability of his testimony. S*ee, e.g., United States v. Lopez–Martinez*, 543 F.3d 509, 515 (9th Cir. 2008); *United States v. Mejia–Luna*, 562 F.3d 1215, 1219 (9th Cir. 2009); *United States v. Valencia-Amezcua*, 278 F.3d 901, 908 (9th Cir. 2002). In *Lopez-Martinez*, the Ninth Circuit held that the district court did not err in admitting expert testimony from a border patrol agent regarding "patterns and methods common among [human] smugglers in the Yuma area." 543 F.3d at 514-515. As the Court noted, "[t]his evidence was neither rocket science nor complex statistical modeling," and was based on the Agent's training and experience. *Id.*

Expert testimony regarding general behavioral characteristics of sexual abuse victims

Expert testimony about general behavior characteristics that may be exhibited in children who have been sexually abused, and that is limited to a discussion of a class of victims generally, assists the trier of fact in understanding the evidence, and does not improperly bolster the testimony of a child victim. *See United States v. Antone*, 981 F.2d 1059, 1062 (9th Cir. 1992); *United States v. Hadley*, 918 F.2d 848, 852 (9th Cir. 1990). Expert testimony of typical characteristics of victims of child abuse, based upon the expert's professional experience interviewing victims, does not rely upon "novel scientific technique' or employ 'any special

techniques or models.'" *United States v. Bighead,* 128 F.3d 1329, 1330 (9th Cir. 1997) (*quoting Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923)).

The expert witness in *Bighead* had experience interviewing over 1300 victims of child sexual abuse, and testified to her observations of typical characteristics of these victims, drawn from her many years of experience. *See id.* The Ninth Circuit held that it was not an abuse of discretion for the district court to admit the expert testimony, as it was "not 'scientific testimony' subject to *Daubert*, because it involved 'specialized knowledge, not scientific knowledge' and requires no inference or assertion derived from a scientific method." *Id., (citing to Cordoba*, 104 F.3d at 225). The Court also found that the evidence did not improperly buttress the victim's testimony, as the expert testified only about a class of victims generally. Finally, the Court found that the testimony had significant probative value "in that it rehabilitated (without vouching for) the victim's credibility after she was cross-examined about the reasons she delayed reporting and about the inconsistencies in her testimony." *Id.* at 1331.

The Ninth Circuit, in two recent unpublished decisions, has reiterated the holding of *Bighead* in affirming the district court's admission of expert testimony about the "general behavioral characteristics of child sexual abuse victims." *United States v. Young*, 2015 WL 4930218 (9th Cir. 2015); *United States v. Nation*, 543 Fed.Appx. 677, 678 (9th Cir. 2013); *see also Brodit v. Cambra,* 350 F.3d 985, 991 (9th Cir. 2003) (noting that testimony regarding child abuse accommodation syndrome "is admissible in federal child-sexual abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth.") (*citing to Bighead*, 128 F.3d at 1329, and *Antone*, 981 F.2d 1059). Other Circuits have similarly affirmed the district court's admission of expert testimony regarding the general characteristics of child sexual abuse victims. *See United States v. Roach*, 644 F.3d 763,

764 (8th Cir. 2011); *United States v. Koruh,* 201 F.3d 390 (10th Cir. 2000) (unpublished); *United States v. Two Elk*, 536 F.3d 890, 904 (8th Cir. 2008); *United States v. Long*, 328 F.3d 655, 665 (D.C. Cir. 2003).

## ARGUMENT

I.     **The testimony of Mydell Yeager is relevant to help the jury in understanding the evidence and determine facts in issue during the trial, will not improperly bolster the credibility of the victim, and is more probative than prejudicial.**

Mydell Yeager's testimony will help the jury in understanding the nature and timing of H.H.'s disclosure of sexual abuse in this case.  It will also help the jury in understanding why H.H. did not previously disclose the sexual abuse, why she previously denied sexual abuse occurred, and why she desired to be with the Defendant, even after disclosing that he had sexually abused her.  These issues of fact will be squarely before the jury, based upon H.H.'s testimony, the Defendant's cross-examination and argument relating to her testimony, and the evidence showing the timing of her disclosure and the initiation of the investigation that led to this case.  The expert testimony will not be used by the Government to bolster H.H.'s testimony, but will rather assist the jury in weighing her credibility and will rebut the Defendant's attacks on her credibility.  Under Rule 702, this expert testimony will help the jury understand the evidence and determine facts in issue.

Because of the Defendant's intended attacks on H.H.'s credibility, the probative value of Mydell Yeager's expert testimony is not substantially outweighed by the danger of unfair prejudice.  Mydell Yeager will not testify that H.H. meets any of the common characteristics of child sexual abuse victims, nor will she testify that the Defendant meets any of the common characteristics of child sexual abusers.  Ms. Yeager has no knowledge of the facts of this particular case.  Her testimony will be limited to the general characteristics of child sexual abuse

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 9**

victims, including phases of sexual abuse, how acts of "grooming" by an offender commonly precede the actual sexual abuse, and why almost all victims of child sexual abuse delay disclosing the abuse.

The nature and timing of H.H.'s disclosure of the Defendant's sexual abuse will be a central issue at trial.  This evidence relates not only to H.H.'s credibility, but to her motivation in disclosing the abuse, and any undue influence upon her testimony.  Expert testimony regarding the general characteristics of child victims of sexual abuse, and the time it takes for the victims to disclose the incidents, is particularly relevant when the Defendant attacks the victim's credibility based upon the delay in disclosing the abuse.  *See Nation,* 543 Fed.Appx. at 678 (*citing to Bighead*, 128 F.3d at 1330-31).

Mydell Yeager's testimony will help the jury in understanding an issue that is not within the knowledge of the average juror.  "[J]urors are at a disadvantage when dealing with sexual abuse of children," and "the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse." *United States v. Pierre*, 812 F.2d 417, 419-420 (8th Cir. 1987) (*citing to State v. Myers*, 359 N.W.2d 604 (Minn.1984)).  Contrary to the Defendant's argument, the Government seeks to admit this expert testimony not as an attempt to bolster the credibility of the victim, but as rebuttal to the Defendant's anticipated attacks on her credibility as a result of the delay in disclosing, the timing of the disclosure, and prior denials that abuse occurred.

The Defendant argues that the topic of "grooming" is irrelevant to the instant charges. However, section 2251(a) makes illegal the use, persuasion, inducement, enticement, or coercion of children to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct.  *See United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993); *United States v. Buculei*,

262 F.3d 322, 328 (4th Cir. 2001). As the Fourth Circuit has pointed out, sexual exploitation of minors "can be accomplished by several means and is often carried out through a period of grooming." *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012) (*quoting United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011)).

"Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *Chambers,* 642 F.3d at 593; *see also United States v. Hofus*, 598 F.3d 1171, 1181 (9th Cir. 2010) (fn. 5) (Explaining that Defense expert defined "grooming" as a "process where offenders engage in certain behaviors and mental games to secure victims, make them comfortable with sexual activity, and then engage them with sex contact."  It is a "slow, methodical process to take someone who is extremely naïve and innocent about sexual matters, gain trust, gain a comfort level around sexual ideas, and then engage them sexually.").

In this way, Section 2251(a) "targets the sexual grooming of minors as well as the actual sexual exploitation of them." *Engle,* 676 F.3d at 412 (*quoting United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011).  In other words, the law prohibits not only the production of child pornography by brute force, but the equally effective, destructive, and gradual breaking down of inhibitions so that minors can be sexually exploited such as the evidence will show occurred in this case.  The Defendant's argument that actions construed as "grooming" can be normal and completely innocent is correct, but it omits an important distinction:  the intent with which the offender engages in grooming acts.  Acts of grooming which gradually gain trust and a comfort level with the victim, progress to exposing the victim to sexual topics in an attempt to desensitize

them to the issue of sex, and then lead to sexual contact, are intended to make the child feel that sexual abuse is normal.  As a result, the victim is less likely to disclose the abuse when it occurs.

The Defendant also argues that the topic of delayed disclosure as a typical characteristic of sexual abuse victims "has marginal relevance at most."  Defendant's Motion in Limine and Request for Daubert/Kumho Hearing at 8.  (Dkt. # 82).  The Defendant's argument is contradicted by his clear intent to attack H.H.'s credibility in these areas.  By pursuing this defense, the Defendant "opens the door" to Mydell Yeager's expert testimony, which will help the jury in determining how these issues relate to H.H.'s credibility.  *See Young* 2015 WL 4930218 at *2 (Expert's testimony was "helpful and probative because Young had attacked the victims' credibility based on their delayed and incomplete reports of the abuse.").

Mydell Yeager's testimony has high probative value to help the jury understand and determine facts at issue in this case.  The Defendant's intended defense of attacking the credibility of H.H. eliminates any risk of unfair prejudice.  Under Rule 702's requirement that the expert testimony help the jury, and Rule 403's balancing test, this Court should deny the Defendant's motion and find that Mydell Yeager's testimony is relevant, and that the probative value is not substantially outweighed by the danger of unfair prejudice.

II.     **The testimony of Mydell Yeager is reliable and admissible under F.R.E. 702, as it is based upon her professional experience and specialized knowledge, and not upon any novel scientific theory, technique, or methodology.**

Mydell Yeager has counseled over 3,000 child sexual abuse victims over the past 33 years[1].

As a result of her professional experience, she has observed consistent behavioral characteristics of the victims.  These characteristics include their behavioral responses (1) to grooming

---

[1] The Defendant's motion in limine does not challenge Mydell Yeager's qualifications to provide the expert opinion discussed herein.  The Idaho Court of Appeals has held that Mydell Yeager is qualified to testify regarding the general behavior and emotion characteristics of victims and offenders in child abuses cases based upon her "experience, personal knowledge, and specialized training."  *State v. Dutt*, 73 P.3d 112, 117-118 (Idaho Ct. App. 2003).

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 12**

behaviors of the offender; (2) to the progression of distinct phases of sexual abuse, and; (3) regarding their willingness to disclose the abuse once it occurs.  No scientific test exists to determine if a child is a victim of sexual abuse, or to quantify the types of behaviors exhibits by victims.  Rather, Ms. Yeager's experience counseling thousands of victims over a significant period of time provides a reliable foundation for the behavioral characteristics she has observed and will testify to.  Her testimony, derived from her specialized knowledge, is reliable, and is not subject to rigid scientific analysis in order to be admissible.

"The district court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury, otherwise, the factual basis of the testimony goes to the weight of the evidence." *Larson v. Kempker*, 414 F.3d 936, 940-41 (8th Cir.2005) (quotation omitted); *United States v. Two Elk*, 536 F.3d 890, 904 (8th Cir. 2008).  Rule 702 requires reliable testimony "which does not include unsubstantiated speculation and subjective beliefs." *Cooper*, 510 F.3d at 942 (quotations and citations omitted).  In determining reliability, Rule 702 requires the Court to consider whether the testimony is the product of reliable principles and methods. *See id*. at 942–43; *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir.2005) (Explaining that the Court should use a flexible, factor-based approach, and listing potential factors for the Court to consider).

However, the factors in determining reliability may not apply in every case.  *See Kumho Tire Co.*, 526 U.S. at 151.  The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," on a case-by case review. *Prime*, 431 F.3d at 1152 (*quoting Kumho Tire Co.*, 526 U.S. at 152).  For expert testimony based on specialized knowledge, a scientific analysis of the testing of the theory or technique, the potential errors rates, peer review, and standards of control, is usually not applicable.

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 13**

Specialized knowledge testimony based on training and experience is generally not "rocket science nor complex statistical modeling." *Lopez-Martinez*, 543 F.3d at 514-515.  Training and experience can provide sufficient information to determine reliability on its own. *Id.*, *Mejia– Luna*, 562 F.3d at 1219 *Valencia-Amezcua*, 278 F.3d at 908.

Mydell Yeager's specialized knowledge testimony, gained from her personal experience, does not rely upon any type of scientific theory, technique, or methodology.  Her testimony does not rely upon any type of scientific process, testing, or surveys.  Thus, her testimony is not subject to *Daubert's* scientific analysis of whether the methodology can be tested, its rate of error, whether it was subject to peer review, the controlling standards, or general scientific acceptance.  Rather, the court simply needs to find that the foundation underlying her expert testimony is reliable, and that the opinions generated as a result are based upon that foundation.

Mydell Yeager's testimony is based upon her personal experience counseling over 3,000 sexual abuse victims.  The facts and data underlying her expert opinion provide a sufficient foundation for the opinion.  The principles and methods underlying her testimony include speaking to the victims about the sexual abuse and their behavioral responses thereto in counseling sessions, then noting consistencies among their behavioral characteristics.  This methodology is highly reliable, as she personally obtained the facts and data from the victims.  Because of the broad nature of counseling sessions, as well as the size of the data pool she draws from (i.e. over 3,000 victims counseled), the foundation for Mydell Yeager's testimony is arguably more reliable than scientific studies or techniques.

The Defendant argues that Mydell Yeager's testimony is not supported by studies relating to "grooming."  Rule 702 does not rank academic training over demonstrated practical experience. *Roach* 644 F.3d at 764. (*citing to United States v. Anderson*, 446 F.3d 870, 875 (8th Cir.2006);

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 14**

*Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir.1990)).  The Defendant's position that Mydell Yeager's personal experience is not corroborated by academic studies can be explored on cross-examination and in argument to the jury.  While the Government submits that her personal experience provides a more than adequate foundation for her testimony, Ms. Yeager would testify that her professional training and the literature that she has reviewed also supports her testimony relating to the existence of the general behavioral characteristics of child sexual abuse victims.  She would further testify that the phases of child sexual abuse, the use of grooming by offenders, and delayed disclosure by victims are all issues that are generally accepted in the therapeutic community.

The Defendant cites to several state courts that have held that evidence of "child sexual abuse accommodation syndrome" (CSAAS)[2] is inadmissible.  While Mydell Yeager's testimony shares a few common themes with CSAAS, she will not be providing any testimony on CSAAS. She does not diagnose the syndrome, as she is not a psychologist or psychiatrist.  She does not use the CSAAS diagnosis in counseling children, and she will not use that terminology during her testimony.  Finally, her testimony does not rely in any way upon studies, literature, or training relating to CSAAS.

Regardless, numerous state courts have permitted the admission of CSAAS testimony. *See Admissibility of Expert Testimony on Child Sexual Abuse Accommodation Syndrome*, 85 A.L.R. 5th 595 § 2(a) (2001) (collecting cases).  Additionally, the State of Idaho has admitted Mydell Yeager's expert testimony regarding characteristics of child sexual abuse victims.  *See*

---

[2] Child sexual abuse accommodation syndrome (CSAAS) first came to light in an article published in 1983 which described five characteristics commonly observed in sexually abused children: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted, and unconvincing disclosure; and (5) retraction. The syndrome itself was not intended to detect sexual abuse but, rather, it assumed the presence of abuse and explained a child's reactions to it. Hence, the behavioral studies of CSAAS were not designed to provide certain evidence of guilt or innocence, but rather to provide a common language for the analysis of child sexual abuse. *See Admissibility of Expert Testimony on Child Sexual Abuse Accommodation Syndrome,* 85 A.L.R. 5th 595 § 2(a) (2001).

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR DAUBERT/KUMHO HEARING - 15**

*State v. Blackstead*, 878 P.2s 188 (Idaho Ct. App. 1994).  More importantly, the Ninth Circuit

has held that CSAAS testimony is admissible (*Bighead*, 128 F.3d at 1331), and has twice in the

past two years affirmed the admission of expert testimony substantially similar to Mydell

Yeager's.  *See Young*, 2015 WL 4930218 at *1, *Nation*, 543 Fed.Appx. at 678-679.  Notably, the

district court in *Young* drew a distinction between testimony regarding syndromes, which would

not be permitted absent being recognized in literature and subject to peer review, and the general

specialized knowledge testimony, which it admitted.  *See* 2015 WL 4930218 at *1.  The Ninth

Circuit affirmed this admission, stating "[n]either the record nor our precedent supports Young's

arguments that Moncher's testimony should have been excluded as unreliable, not helpful to the

jury, improper vouching, or unfairly prejudicial.  The admission of the expert testimony presents

no reversible error."  *Id*. at *2.  Like the expert in *Young,* Mydell Yeager will not be testifying

regarding syndromes.

     This Court should deny the Defendant's request for a *Daubert/Kumho* hearing.  Mydell

Yeager's personal experience counseling child sexual abuse victims, and the common behavioral

characteristics she noted as a result, is sufficiently reliable for this Court to admit her expert

testimony under F.R.E. 702, and the cases cited above.  The Defendant's motion in limine should

be denied, and Mydell Yeager's expert testimony should be admitted at trial.

**<u>CONCLUSION</u>**

     This Court should deny the Defendant's motion in limine and permit Mydell Yeager to

testify regarding the behavioral characteristics of child sexual abuse victims.  Her expert

testimony is relevant to help the jury understand the evidence and determine facts in issue.  Her

expert testimony is based upon sufficient facts and data; her personal experience counseling over

3,000 victims of child sexual abuse over the past 33 years.  Finally, her principles and methods,

which consist of counseling victims and noting common behavioral characteristics, are reliable.

Her testimony is admissible under Federal Rule of Evidence 702.

Respectfully submitted this <u>13th</u> day of October, 2015.


WENDY J. OLSON
UNITED STATES ATTORNEY
By:

<u>/s/ *Justin D. Whatcott*   </u>
JUSTIN D. WHATCOTT
JOSHUA D. HURWIT
Assistants United States Attorney


<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>13th </u> day of October, 2015, the foregoing **UNITED**

**STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR**

**DAUBERT/KUMHO HEARING** was filed electronically through the CM/ECF system, and

that a copy was served on the following parties or counsel by:

| Thomas Monaghan<br>Federal Defender Services of Idaho<br>702 West Idaho Street, Suite 1000<br>Boise, ID 83702<br>Thomas_Monaghan@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |
| --- | --- |

<u>/s/ *Barbara Layman*</u>
Barbara Layman
Legal Assistant


**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE AND**
**REQUEST FOR DAUBERT/KUMHO HEARING - 17**