WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-14-168-S-EJL |
| Plaintiff, | |
| vs. | **UNITED STATES' TRIAL MEMORANDUM** |
| WILLIAM R. WILKINSON, | |
| Defendant. | **Redacted** |

The United States of America, by and through Wendy J. Olson, United States Attorney

for the District of Idaho, and the undersigned Assistants United States Attorney, hereby submits

its trial brief in the above-captioned case.

I.     **STATUS OF CASE**

Trial is scheduled to begin on October 23, 2015.  On October 14, 2015, the Government

filed the following: (1) Government's exhibit list; (2) Government's proposed jury instructions;

(3) Government's proposed voir dire; (4) Government's proposed verdict form; (5)

UNITED STATES' TRIAL MEMORANDUM - 1

Government's trial brief; (6) a motion to dismiss Count Six of the Second Superseding Indictment, and; (7) two stipulations of fact to be read to the jury.  The Government also provided the Defendant with a copy of the Government's exhibits.

The Government provided the Defendant with an anticipated witness list on September 3, 2015, and an amended witness list on October 12, 2015.  Counsel for the Government has discussed the Government's evidence with Defense counsel on numerous occasions, and believes that the Defendant has been apprised of all witnesses the Government intends to call.  All exhibits have been disclosed in discovery, with the exception of the sexually explicit images, which defense counsel and the Defendant have viewed on multiple occasions.  The Government will disclose any additions to the exhibit list to the Defendant and the Court immediately upon the determination that the exhibit will be presented at trial.  To date, the Government has not received any reciprocal discovery from the Defendant.

The Government anticipates that the trial will take no more than five trial days.  Issues relating to the Government's evidence, including witnesses and exhibits, are discussed in detail below.

## II.     INDICTMENT CITATION ERROR

Counts Four and Five of the Indictment contain errors in the citations to United States Code.  The heading of Count Four cites to 18 U.S.C. § 2252A(5)(B), and the body of Count Four cites to 18 U.S.C. § 2251(a), when the correct citation in both instances is 18 U.S.C. § 2252A(a)(5)(B).  The heading and the body of Count Five cites to 18 U.S.C. § 2252A(5)(B), when the correct citation in both instances is 18 U.S.C. § 2252A(a)(5)(B).

To the extent necessary, the Government moves to amend the Indictment to cite to the correct code sections.  *See* Fed. R. Crim. P. 7(e).  However, such an amendment is not necessary

UNITED STATES' TRIAL MEMORANDUM - 2

in any event, as the Court generally does not provide the Indictment to the jury, and can remedy

any clerical error in the instructions.  *See United States v. Mastelotto*, 717 F.2d 1238, 1249 (9th

Cir. 1983) overruled on other grounds ("In instructing the jury, the court may, of course, correct

typographical or clerical errors in the indictment . . . .").  Further, Rule 7(c)(2) provides:

> Citation Error. Unless the defendant was misled and thereby prejudiced, neither
> an error in a citation nor a citation's omission is a ground to dismiss the
> indictment or information or to reverse a conviction.

The Government requests that the Court either grant an amendment by interlineation to correct

the citation error in the Indictment, or remedy the citation error in the instructions to the jury.

## III.    FACTUAL BACKGROUND

UNITED STATES' TRIAL MEMORANDUM - 3

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

On May 12, 2013, ███████████████████████████████████████████,

H.H. disclosed to L.T. that the Defendant had been sexually abusing her.  On May 13, 2013, L.T.

relayed H.H.'s disclosure to Lincoln County Deputy Sheriff J.R. Gregory.  Gregory scheduled a

forensic interview of H.H. with Children at Risk Evaluation Services (CARES) in Twin Falls,

Idaho.  On May 22, 2013, Teema Boies (now Loeffelholz), a forensic interviewer with CARES,

interviewed H.H. at the CARES office in Twin Falls, Idaho.  During that interview, H.H.

disclosed that the Defendant had sexually abused her for years, including during ████████████

██████████████████████████ May of 2013.  In summary, H.H. stated that the Defendant

sexually abused her, including genital-genital, genital-oral, anal-genital, and manual-genital

contact.  She also disclosed that the Defendant exposed her to pornography, took pictures of her

with her underwear off, that he exposed her to sex toys and used them during the abuse, and that

he purchased thong underwear for her to wear.  During the CARES interview, H.H. said of the

UNITED STATES' TRIAL MEMORANDUM - 4

Defendant, "I really don't to go away from him because ███████████████████
██████████████████████████████████

Based upon the CARES interview of H.H., Gregory submitted an affidavit in support of a search warrant for the Defendant's residence in Shoshone, Idaho on May 24, 2013.  The Honorable Larry R. Duff, Fifth Judicial District Magistrate Judge signed the search warrant on that same day.  Gregory and other officers from the Lincoln County Sheriff's Office served the search warrant at the Defendant's residence that same day.  Officers seized numerous items of evidence, including electronic devices consisting of six cell phones, two digital notepads, two laptop computers, two desktop computers, three hard drives, three web cameras, and a video camera.  Officers also seized several illustrated pictures printed from an internet site depicting sexual abuse of a minor and incest.  Finally, officers seized items which corroborated H.H.'s statements in the CARES interview, including sex toys that she described, thong underwear (size extra small), KY lubricant, condoms, and a jar of "Tucks Medicated Pads" that were in H.H.'s room.  Gregory took a video of the Defendant's residence during the search prior to the seizing of evidence.

The Defendant was not present during the search of his residence.  Gregory asked LCSO Reserve Deputy Bright to arrest the Defendant in Twin Falls, Idaho and bring him to the Lincoln County Sheriff's Office.  When the Defendant arrived at the Lincoln County Sheriff's Office, he was handcuffed with his hands in the front and his left breast pocket was snapped open.  After refusing to answer questions, the Defendant was placed under formal arrest for Lewd and Lascivious Conduct with a Minor in violation of Idaho Code section 18-1508.  During a search incident to arrest, Gregory discovered an Apple iPhone 5 in the Defendant's left breast pocket.

Gregory observed that the phone's screen showed that the phone was "buffering."  Gregory was unable to turn the phone off, or access it any way, due to the fact that it was "buffering."[1]

On June 4, 2013, Gregory prepared an affidavit for a search warrant authorizing a forensic search of the electronic devices seized from the Defendant's residence on May 24.  The Honorable Mark Ingram, Fifth Judicial District Magistrate Judge, signed the search warrants on June 12, 2013.  On July 13, 2013, Gregory served a detention warrant on the Defendant to obtain his DNA. Gregory executed the search warrants by transporting the electronic devices to the Intermountain West Regional Computer Forensics Laboratory (IWRCFL) in Boise, Idaho, on June 17, 2013.  On July 17, 2013, the Defendant listed his house in Shoshone for sale.

On October 24, 2013, the state charges against the Defendant were dismissed, pending a review of the forensic examination of the computers, and the completion of DNA testing on items seized from the Defendant's residence.  On October 31, 2013, Gregory received the results of the forensic examination of the Defendant's computer from IWRCFL forensic examiner Don Lukasik, and sought to refile the charges against the Defendant and to obtain an arrest warrant.

Lukasik conducted a forensic analysis of the Defendant's Apple MacMini computer, which was seized pursuant to the search warrant of his residence.  Lukasik discovered 1106 ".jpg" images in a "Firefox cache" folder on the computer.  These images were taken with a camera at a rate of approximately 1.5 to 2 images per second, leading Lukasik to believe that they were taken with a "webcam."  The fact that the images were discovered in the Firefox cache led Lukasik to believe that they were viewed using the Firefox browser on the computer.  The images, when placed together in chronological order, create two short videos.  The timestamp on

---

[1] Meridian Police Detective Jim Bohr attempted to extract data from the iPhone 5, but was unable to access the phone's data.

UNITED STATES' TRIAL MEMORANDUM - 6

the videos shows 3/3/13 at approximately 14:00 (2:00 p.m.). ████████████████

████████████████████████████

The backgrounds of both videos show the Defendant's residence.  The first video, which is approximately one minute and twenty-six seconds in length (from 13:59 to 14:00), shows H.H. in a bra, flashing her breast area.  The second video, which is approximately twelve minutes and twenty-two seconds, (from 14:09 to 14:19), shows the Defendant sitting in a chair without a shirt on, and H.H., who is clothed.  During the second video, the Defendant engages in simulated sexual intercourse with H.H., including oral-genital and genital-genital.  The second video also depicts a lascivious display of H.H.'s genitals.  At one point, the second video depicts H.H. on top of the Defendant, with the Defendant's hands inside the back of her pants.  These two videos form the basis for Count Three of the Second Superseding Indictment, which charges the Defendant with Sexual Exploitation of a Minor.

Lukasik also discovered approximately 27 photographs that depicted sexually explicit conduct with H.H., which appeared to be taken in a bed.  The images were discovered in an "iNode" folder on the Apple MacMini computer.  The images depict lascivious exhibitions of the genitals of H.H. and the Defendant, and actual or simulated sexual intercourse by genital-genital or genital-anal.  The presence of these images on the Apple MacMini forms the basis for Count Four of the Second Superseding Indictment, which charges the Defendant with possessing child pornography.

Based upon the evidence obtained during Lukasik's forensic examination, the Lincoln County Prosecutor re-filed a complaint against the Defendant, charging him with five counts of lewd conduct with a minor under 16.  The Court issued a warrant for his arrest on November 1, 2013.  On that day, Deputies from the Twin Falls County Sheriff's Department attempted to

arrest the Defendant at his place of employment, the Rock Creek Grill, in Twin Falls, Idaho.

Deputy Jeremy Compton and another Deputy asked Madison Miller, a hostess at the Rock Creek

Grill, if the Defendant was present.  Madison Miller indicated she would look, and walked to the

back of the restaurant.  Madison Miller told the Defendant, who was in the kitchen of the

restaurant, that two officers were there to see him.  The Defendant told Madison Miller to tell the

officers that he wasn't there.

After Madison Miller spoke with the Defendant, Rock Creek Grill manager Wes Miller

(no relation to Madison), observed the Defendant flee out the back door.  Madison Miller came

back to the hostess stand and told the officers that Wilkinson was not present.  Wes Miller then

spoke to the officers and told them that the Defendant had fled out the back door.  The officers

attempted to locate the Defendant, but were unable to do so.

On November 4, 2013, Gregory observed a pickup truck that he believed belonged to the

Defendant at Craig Hadden's house, which was next door to the Defendant's residence in

Shoshone.  Gregory ran the registration and discovered that it had recently been registered to

Hadden.  Gregory spoke to Hadden, who told him that he and the Defendant had traded vehicles

on October 25, 2013, and that the Defendant was now driving a 2005 dark blue Chevy truck with

Idaho license plate 4L7841 that used to belong to Hadden.  Hadden also stated that the

Defendant might not have registered the truck in his name.  Gregory confirmed that the truck

was still registered in Hadden's name.  Gregory put an attempt to locate on the vehicle with

surrounding law enforcement agencies.

Gregory provided information to Deputy U.S. Marshal Shawn Wontor about the arrest

warrant for the Defendant, the vehicle he was driving, and the fact that he had family in the Salt

Lake City area.  Wontor contacted the U.S. Marshal's Service in Salt Lake City, and asked that

UNITED STATES' TRIAL MEMORANDUM - 8

they attempt to locate the Defendant.  Between November 5 and 12, 2013, the U.S. Marshal's

Fugitive Task Force in Salt Lake City, Utah attempted to locate the Defendant.  On November

12, 2013, agents with the task force located the dark blue Chevy truck with Idaho license plate

4L7841 at an apartment complex in Salt Lake City.  Agents then observed the Defendant near

the vehicle and placed him under arrest.  Deputy U.S. Marshal Rick Simonelli called Gregory

and informed him of the arrest, as well as the items observed in the Defendant's vehicle.

Gregory requested that the vehicle be impounded so that he could seek a search warrant.  The

vehicle was towed to the impound yard at the Unified Police Department (UPD) of Greater Salt

Lake.

On November 25, 2013, FBI Child Adolescent Forensic Interviewer Rachael Happel

interviewed H.H. in Boise, Idaho.  H.H. recounted much of the same abuse she described to

Teema Boies, but also provided further information and detail about the Defendant's acts.  H.H.

explained that the Defendant made her watch pornography during the abuse, that he took a video

of H.H. "rubbing against" him so that he could "remember her" when she was gone, that he told

H.H. not to tell anyone because he could go to jail, and that he threatened harm to H.H.'s mother

if H.H. told anyone about the abuse.

On November 27, 2013, an affidavit in support of a search warrant for the dark blue

Chevy truck was sworn by FBI Agent Daniel Horan before the Honorable Brooke C. Wells,

United States Magistrate Judge for the District of Utah.  Judge Wells signed the search warrant,

and Agent Horan served it that same day.  Agent Horan observed numerous items belonging to

the Defendant in his vehicle, including his wallet and mail addressed to him.  The vehicle

contained bags packed with clothing and personal items, including toiletries.  Horan seized

numerous electronic devices, including an Apple laptop computer with a Toshiba 500GB hard

UNITED STATES' TRIAL MEMORANDUM - 9

disk drive.  Horan also seized a photograph of a tattoo of a little girl holding a cat, which was later identified as a photo of H.H.  When the Defendant was booked into federal custody by Deputy U.S. Marshal Shawn Wontor on May 16, 2014, ████████████████████████████████
████

     Don Lukasik conducted a forensic examination of the Apple Laptop seized in the Defendant's truck in Salt Lake City.  He discovered images that depicted sexually explicit conduct with H.H. that appeared identical to the images discovered on the Apple MacMini from the Defendant's residence.  The first series of images ("the bed series") were taken in the Defendant's bed, and depict the lascivious exhibition of the Defendant's genitals placed up against, and inside, H.H.'s buttocks, showing actual or simulated sexual intercourse by genital-genital or genital-anal.  H.H. is wearing pink thong underwear in the images.  One image in the series depicts the Defendant's naked torso, with a portion of his tattoo visible, and H.H. lying on her side.  Also visible in the corner of the image is the dark hair, shoulder, and white top of a third individual in the bed.  The images contained exchangeable image file data ("EXIF data"), which is information stored in an image when it is taken with an electronic device.  The EXIF data in the images showed that the images were taken with an Apple iPhone 5 on November 3, 2013 between 5:30 a.m. and 7:00 a.m. ████████████████████████████████
███████████████████████.  The EXIF data also contained GPS location information that showed that the images were taken at the Defendant's residence[2].  These images form the basis of Count One of the Second Superseding Indictment, which charges the Defendant with Sexual Exploitation of Children.

---

[2] FBI Special Agent Mary Martin brought up the GPS coordinates from the EXIF data utilizing Google Earth and a viewing program called IRFANVIEW, and confirmed that the GPS coordinates come back to the Defendant's residence in Shoshone, Idaho.

Lukasik found a second series of sexually explicit images on the Apple Laptop ("the jeans series").  The series consists of five images depicting H.H. lasciviously exhibiting her genitals and engaging in actual or simulated masturbation.  The images show H.H. on a bed between two large pillows, and she is wearing jeans, which are pulled down to her knees.  The images also contained EXIF data, showing that they were taken with an Apple iPhone 5 on December 9, 2013 at approximately 1:49 p.m. ███████████████████████ ████████████████████████████████ The EXIF data also contained GPS location information that showed that the images were taken at the Defendant's residence.  These images form the basis of Count Two of the Second Superseding Indictment, which charges the Defendant with Sexual Exploitation of Children.

Lukasik also discovered approximately 184 images that were sexually explicit or child erotica on the Apple Laptop computer.  These images were located in the "Google Chrome cache folder," indicating that the images were viewed using the Google Chrome browser on the computer.  Lukasik also discovered internet URLs on the Apple Laptop that are consistent with child pornography websites, including "youngheaven.com," "freeteenyporn.com," "preteen.preteen-supermodel.org," and "cuffedteens.com".  FBI Special Agent Mary Martin sent the 184 images to the National Center for Missing and Exploited Children for victim identification.  NCMEC identified 11 images as being from "known series" that depict real minor children engaged in sexually explicit conduct.  These images form the basis of Count Five of the Second Superseding Indictment, which charges the Defendant with Access with Intent to View Child Pornography.

In March of 2015, FBI Special Agent Mary Martin interviewed N.V.G., the mother of J.V.G..  N.V.G. informed Agent Martin that J.V.G. ███████████████████████████████

[3] The first Friday in December of 2012 was December 7th.

UNITED STATES' TRIAL MEMORANDUM - 11

███████████████████████████   N.V.G. stated that J.V.G. told her that the

Defendant had touched her "private parts" over her clothing while she was at the Defendant's

residence.  On April 3, 2015, J.V.G. was interviewed at CARES in Twin Falls, Idaho by Anne

Tierney.  During the interview, J.V.G. stated that ████████████████████████████

█████████, and that she and H.H. slept in the Defendant's bed with him.  J.V.G. described that,

during the middle of the night, someone "grabbed her butt" and was "massaging it."  She also

explained that the Defendant took her and H.H. to Target, where he purchased thong underwear

for H.H.  The Defendant told H.H. and J.V.G. "if anyone asks you what they are for to say they

are for" H.H.'s Mom.  J.V.G. stated she and H.H. modeled the thong underwear for the

Defendant.

J.V.G. identified herself in photographs from November 3, 2012 that depict her and H.H.

at the Defendant's residence.  She also identified herself in the image which shows the

Defendant's naked torso and tattoo, H.H. on her side, and a third individual with black hair and a

white top.  J.V.G. explained that this image depicts them in the Defendant's bed, and that the

image was taken on the same date that she felt someone touching her.

## IV.   STATUTES AND ELEMENTS OF THE OFFENSES[4]

### a.   Counts One, Two, and Three: Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2251(a)

Counts One Two, and Three of the Second Superseding Indictment charge the defendant

with violating Title 18, United States Code, Section 2251(a), which provides, in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or
> coerces any minor to engage in… any sexually explicit conduct for
> the purpose of producing any visual depiction of such conduct…
> shall be punished …, if that visual depiction was produced or
> transmitted using materials that have been mailed, shipped, or

---

[4] The Government has moved to dismiss Count Six of the Second Superseding Indictment.  (Dkt. # 96).

> transported in or affecting interstate or foreign commerce by any
> means, including by computer, or if such visual depiction has
> actually been transported or transmitted using any means or facility
> of interstate or foreign commerce or in or affecting interstate or
> foreign commerce or mailed.

To sustain its burden of proof for sexual exploitation of children in the present case, the

Government must prove beyond a reasonable doubt:

First:  That the victim was less than 18 years old;

Second:  That the defendant persuaded, induced, enticed, or coerced the minor to take

part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct;

Third:  Either (a) such visual depiction was produced using materials that have been

mailed or shipped or transported in and affecting interstate or foreign commerce by any means,

including by computer; or (b) Such visual depiction was actually transported across state lines

from the State and District of Idaho to the State and District of Utah.

### 1.    First Element

With respect to the first element, the victim (HH) will testify that she is the person

depicted in the images and the video.  She was born in 2004, clearly making her less than 18

years of age.

### 2.    Second Element

The plain language of the statute covers the Defendant's conduct here, and congressional

intent confirms it.  H.H. will testify that the Defendant took sexually explicit pictures of her as

one part of child molestation that had started when she was quite young.  Evidence will show the

images were taken using an iPhone 5, and the videos were taken using a webcam.  The evidence

will show that the photos were transferred to the Defendant's Apple laptop computer, and onto a

Toshiba hard drive bearing a manufacturer's trade label "Made in the Philippines."  The videos

were transferred onto, and viewed on, the Apple MacMini computer, bearing a manufacturer's

UNITED STATES' TRIAL MEMORANDUM - 13

trade label "Assembled in China," and a Seagate hard drive bearing a manufacturer's trade label "Product of China."  Evidence will show the Defendant transported the Apple Laptop computer containing the images of HH from Idaho to Utah sometime during the first two weeks of November 2013.

The evidence will show that the Defendant is the person who used, persuaded, or coerced H.H. to take part in the sexually explicit conduct for the purpose of producing a visual depiction. In addition to H.H.'s testimony establishing that the Defendant produced the images, evidence will show that the Defendant was the individual depicted in the images, and was the individual that took them. ████████████████████████████████████████████

█████████████████.  The images were taken at his residence, as evidenced by the backgrounds of the images as well as the EXIF GPS data.  The images were discovered on his computers.  The Defendant possessed an iPhone 5 during this time as part of a cellular plan with Verizon. Finally, one of the images in the "bed series," (count one) depicts the Defendant's torso with a portion of his tattoo visible, and the second video (count three) depicts the Defendant's face and tattoo.

Section 2251(a) makes illegal the use, persuasion, inducement, enticement, or coercion of children to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct.  *See United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993); *United States v. Buculei*, 262 F.3d 322, 328 (4th Cir. 2001). As the Fourth Circuit has pointed out, sexual exploitation of minors "can be accomplished by several means and is often carried out through a period of grooming." *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012) (*quoting United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011)).  "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of

an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *Id.* In this way, Section 2251(a) "targets the sexual grooming of minors as well as the actual sexual exploitation of them." *Id.* In other words, the law prohibits not only the production of child pornography by brute force, but the equally effective, destructive, and gradual breaking down of inhibitions so that minors can be sexually exploited such as the evidence will show occurred in this case.

The terms "persuade," "induce," and "entice" are not statutorily defined. Being words of common usage, courts have accorded them their ordinary meaning. See, e.g., *Engle*, 676 F.3d at 412 n.3 (discussing "persuade," "induce," and "entice."); *see also United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996) (discussing "use"). With respect to "persuade," "induce," and "entice," the *Engle* court noted "the words are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." *Id.* As to the word "use," the *Sirois* court described its ordinary meaning to include "to avail oneself of, and to carry out a purpose or action by means of." 87 F.3d at 41.

"Sexually explicit conduct" is defined to include, *inter alia*, actual or simulated sexual intercourse, including oral-genital, genital-genital, and genital-anal; actual or simulated masturbation; or the lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2)(A). "Lascivious" has been defined as "exciting sexual desires; salacious." *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), rev'd on other grounds, 553 U.S. 285 (2008). In determining whether a depiction constitutes a lascivious exhibition of the genitals or pubic area, courts consider the following factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

UNITED STATES' TRIAL MEMORANDUM - 15

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).  A visual depiction need not involve all of these factors to be a lascivious exhibition of genitals. *United States v. Whorley*, 400 F. Supp. 2d 880, 883-84 (E.D.Va. 2005) citing *Dost*.

Here, the images forming the basis of Count One include close-up images of the Defendant's penis, making contact with H.H.'s bare genitals, pubic area, or buttocks, all of which the Government submits qualify as lascivious exhibition of the genitals, or as actual or simulated sexual intercourse by genital-genital or genital-anal.  The images forming the basis of Count Two depict H.H. with her hand down her partially open pants suggesting she is engaging in self-stimulation (i.e., masturbation or simulated masturbation), and a lascivious exhibition of H.H.'s genitals.  The videos forming the basis of Count Three show the Defendant and H.H. engaged in simulated or actual sexual intercourse by oral-genital and genital-genital, and includes a lascivious exhibition of the victim's genitals.

### 3.    Third Element – Interstate Commerce

UNITED STATES' TRIAL MEMORANDUM - 16

To meet its burden under the interstate commerce prong as charged in the superseding indictment, the United States must establish any one of the following: (a) such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer; or (b) the visual depiction was actually transported in and affecting interstate and foreign commerce.

Although only required to establish one prong of the interstate or foreign commerce nexus, the United States is able to establish both prongs as described more fully below.

### i.   The visual depictions in Counts One and Two were actually transported in and affecting interstate commerce

Evidence will show the Defendant physically transported the Apple laptop computer containing the images he had created of HH from Idaho to Utah sometime between November 1 and November 12, 2013.  He was seen fleeing out the back door of his place of employment by a law enforcement officer on November 1, 2013, as the officers were attempting to arrest him on a state warrant alleging several counts of lewd and lascivious conduct with HH, the same child who is the person depicted in Counts 1, 2, 3, and 4 of the second superseding Indictment.  The Defendant was arrested in Utah on November 12, 2013.  The Apple laptop containing the child pornography was found inside the Defendant's truck.  EXIF data on the child pornography images charged in Counts One and Two show they were created on November 3, 2012 and December 9, 2012 at the Defendant's home near Shoshone, Idaho.  There can be no dispute that the images crossed state lines.

### ii.   The visual depictions in Counts One, Two, and Three were produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer

UNITED STATES' TRIAL MEMORANDUM - 17

Courts have held that storage of child pornography on devices manufactured in interstate or foreign commerce is sufficient to satisfy the "produced using materials" prong of 2251(a). *See United States v. Fox*, 357 Fed. Appx. 64, 65 (9th Cir. 2009) ("Fox also challenges his § 2251(a) conviction on the ground that the government failed to present sufficient evidence that the cameras Fox used to produce child pornography had traveled in interstate or foreign commerce. Introducing the cameras' country-of-origin labels, which indicated they had been manufactured overseas, sufficed to prove the cameras had moved in foreign commerce.") *See also United States v. Lacy*, 119 F.3d 742, 750 (9th Cir.1997) (defendant "produced" the visual depictions at issue by downloading those images onto disks which had traveled through interstate commerce); *United States v.Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002)(per curiam)(digital copying of a pornographic image "produced" a visual depiction for purposes of establishing that the visual depiction was "produced using" materials (a computer or disk) that had moved in interstate commerce). *See also United States v. Mugan*, 441 F.3d 622, 628 (8th Cir. 2006) (storage of offending images on electronic media storage previously transported in interstate commerce sufficient for Section 2251(a) conviction); *United States v. Zimmerman*, 529 F. Supp. 2d 778, 781, 789 (S.D. Tex. 2007) (sustaining conviction under 2251 where the images of child pornography the defendant produced were found on CDs, a hard drive, and external hard drive that that had traveled in interstate commerce) (*citing United States v. Lacy*, 119 F.3d at 750). To satisfy the jurisdictional element of § 2251(a), the Government is required to prove beyond a reasonable doubt that the child pornography was produced with materials that had traveled in interstate commerce, but not that the defendant *knew* the materials had so traveled. *United States v. Shelton*, 755 F. 3d 1047, 1050 (9th Cir. 2013).

To avoid the expense of calling an out-of-state witness from the manufacturer of the computers (Apple) and the hard drives (Toshiba and Seagate) and streamline the presentation of evidence at trial, the United States intends to offer evidence that the Toshiba hard drive was made in the Philippines, and that the Apple MacMini and the Seagate hard drive were made in China.  The Government has filed a motion in limine seeking admission of these trade inscriptions.

Therefore, assuming that a proper foundation is laid by the United States as to the connection of the Defendant's computer disk drive to counts alleged the superseding indictment, the trade inscriptions thereon are directly relevant to and sufficient proof the images were "produced using" materials that we manufactured outside of Idaho.

### a.   Count Four: Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B)

Count Four of the Second Superseding Indictment charges the Defendant with violating Title 18, United States Code, Section 2252A(a)(5)(B), which provides, in pertinent part:

> Any person who knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

To sustain its burden of proof for possession of child pornography in the present case, the Government must prove beyond a reasonable doubt:

First:  that the Defendant knowingly possessed materials such as computer hard drives and computer disks that contained an image of child pornography;

Second:  That the Defendant knew the materials contained child pornography, and;

Third: the image of child pornography was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer.

Insofar as charged in the second superseding indictment, the statute defines "child pornography" as:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

Under 18 U.S.C. § 2256(8), "Sexually explicit conduct" involves "actual or simulated ... sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal; bestiality; ... masturbation; ... sadistic or masochistic abuse; or ... lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A); *see also* 18 U.S.C. § 2256(2)(B) (providing similar definitions for conduct defined in 18 U.S.C. § 2256(8)(B)).

## 1. First element: possession of materials containing an image of child pornography.

Don Lukasik will testify that the images of H.H. from November 3, 2012, and December 9, 2012, were located not only on the Defendant's Apple laptop computer (as alleged in Counts One and Two), but also on his Apple MacMini computer. The images on the MacMini were located on the hard drive in an "iNode" folder, indicating that they were likely placed there as a result of a backup of another computer. The Defendant's knowledge of the images derives from the fact that he produced the images.

## 2. Second element: the Defendant knew the materials contained child pornography.

UNITED STATES' TRIAL MEMORANDUM - 20

Again, because the Defendant produced the images of H.H. on November 3, 2012 and December 9, 2012, the evidence will show that he had knowledge that the images were of child pornography, and that they were located on his electronic devices, including the MacMini.

### 3.   Third element; interstate commerce

As stated above, the Apple MacMini and the Seagate hard drive are both a "Product of China."

### 4.   Jury determination of prepubescent minor or a minor who had not yet attained 12 years of age.

Count Four of the Second Superseding Indictment alleges that the images of child pornography included images of a prepubescent minor or a minor who had not attained 12 years of age.  This is a factor which enhances the Defendant's maximum sentence pursuant to 18 U.S.C. § 2252A(b)(2), and thus must be found by the jury if they find the Defendant guilty of the offense.  The Government's proposed jury verdict includes this special finding for Count 4.  H.H. was under the age of 12 years when these images were produced.

### b.   Count Five:  Access with Intent to View Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B)

Count Five of the Second Superseding Indictment charges the defendant with violating Title 18, United States Code, Section 2252A(a)(5)(B), which provides, in pertinent part:

> Any person who knowingly accesses with intent to view any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

To sustain its burden of proof for possession of child pornography in the present case, the Government must prove beyond a reasonable doubt:

UNITED STATES' TRIAL MEMORANDUM - 21

First:  that the Defendant knowingly accessed with intent to view materials such as computer hard drives and computer disks that contained an image of child pornography;

Second:  That the Defendant knew the materials contained child pornography, and;

Third:  the image of child pornography was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer.

### 1.  First element:  access with intent to view materials containing an image of child pornography.

Don Lukasik will testify that he discovered images on the Defendant's Apple laptop computer that depicted child pornography.  These images were discovered in the "Google Chrome cache folder."  Lukasik will testify that the presence of these images in that folder indicate that they were viewed using the Google Chrome browser.  Lukasik also discovered internet history containing URLs that are indicative of child pornography websites.  Finally, Lukasik will testify that he discovered evidence that the Apple laptop computer was used solely by the Defendant, including the Defendant's username, iPhone backup files linked to the Defendant's iPhone account, photos of the Defendant and H.H., and other documents relating to the Defendant.

The images depict minors engaged in sexually explicit conduct.  The Government intends to submit four images as evidence of Count Five.  Three of the images depict a minor engaged in actual or simulated sexual intercourse by oral-genital, and one depicts minors engaged actual or simulated sexual intercourse by genital-genital or genital-anal.  The Defendant has stipulated that these four images depict real children that were prepubescent, or under the age of 12, when the image was produced.

SA Martin will testify concerning the process she used to select these images.  She will explain that all the images of suspected child pornography that computer forensic examiner Donald Lukasik found on computers seized from the Defendant's home and truck were submitted to the National Center for Missing and Exploited (NCMEC), which maintains a database of images of previously identified victims of sexual exploitation.  This is a regular part of her work in child exploitation cases.  She received back from NCMEC what are known as Child Victim Identification Program reports ("CVIP reports") that she used to select images for in-depth analysis.  Through that selection process, the specific images that are identified as Government exhibits were chosen, in part because witnesses are available who can identify the children depicted.  *See, e.g. United States v. Woods*, 684 F.3d 1045, 1062 (11th Cir. 2012) (finding that testimony that images found on the defendant's computer matched images in the NCMEC CVIP reports was admissible because it "was not introduced to prove the truth of the matter asserted, i.e., that the images found on [the defendant's] computer matched images of known child pornography. Rather, the testimony explained how the government selected which images recovered from [the] computers to subject to in-depth analysis."). [5]

### 2. Second element: the Defendant knew the materials contained child pornography.

Because the images were viewed using a browser, the actual image would have been depicted on the screen, making it viewable by the Defendant.  The images themselves clearly

---

[5] The government recognizes that the NCMEC CVIP reports may not be used at trial to prove that an image depicts a real child.  *See, e.g., United States v. Blakeslee*, 423 F. App'x 136 (3d Cir. 2011).  The testimony here will explain how the Government selected which images recovered from the Defendant's computers to subject to in-depth analysis.  The Defendant has stipulated that the images depict real children.

UNITED STATES' TRIAL MEMORANDUM - 23

depict child pornography.  Additionally, the evidence of the website URLs for child pornography websites show that the Defendant was actively searching for child pornography.

### 3.  Third element; interstate commerce

As stated above, the Apple laptop was "Made in the Philippines," and was transported from the District of Idaho to the District of Utah in November of 2013.

### 4.  Jury determination of prepubescent minor or a minor who had not yet attained 12 years of age.

Count Five of the Second Superseding Indictment alleges that the images of child pornography included images of a prepubescent minor or a minor who had not attained 12 years of age.  This is a factor which enhances the Defendant's maximum sentence pursuant to 18 U.S.C. § 2252A(b)(2), and thus must be found by the jury if they find the Defendant guilty of the offense.  The Government's proposed jury verdict includes this special finding for Count 5.  The Defendant has stipulated that the images depict minors under the age of 12.

## V.   GOVERNMENT'S EVIDENCE

### a.  Government's Witnesses

The Government anticipates calling the following witnesses:  J.R. Gregory, Lindsay Tanguy, H.H., J.V.G., Teema Boies, Rachel Happel, Mydell Yeager, Craig Hadden, Jeremy Compton, Madison Miller, Wes Miller, Daniel Horan, Shawn Wontor, Jim Bohr, Don Lukasik, Mary Martin.  These witnesses have all been disclosed to the Defendant, along with reports and other materials pertaining to their anticipated testimony.

#### i.  Minor children as witnesses

Both H.H. and J.V.G. are minors that will testify.  The Government anticipates that both witnesses will be nervous, and perhaps somewhat traumatized, by having to testify about the

subjects they will testify to.  18 U.S.C. § 3509(b) allows for child witnesses to testify via 2-way

closed circuit television, and 18 U.S.C. § 3509(e) allows for the courtroom to be closed during a

child's testimony.  At this time, the Government is not moving for either such procedure.

However, the Government does intend to have an adult attendant accompany each child during

their testimony, pursuant to 18 U.S.C. § 3509(i).  The adult attendant will be either a family

member of the child that has no information or knowledge of this case, or a victim-witness

coordinator employed by the Government.

> ii.  Expert witnesses

The Government has provided notice of intent to call two witnesses as experts:  Mydell

Yeager and Don Lukasik.  The Government's notice of both experts provided the information

required by Fed.R.Crim.P. 16(G).  Government's expert Mydell Yeager is the subject of a motion

in limine by the Defendant.

### b.  Government's Exhibits

The Government has marked eighty-eight exhibits for admission.  Fifteen exhibits are

physical items.  The remaining exhibits are either photographs, digital images, or documents that

the Government intends to display using the courtroom's digital evidence display system.  Many

of the exhibits have "sub-exhibits" marked as (a), (b), (c), etc.  For images with EXIF data, the

sub-exhibits are the EXIF data and Google Earth GPS result for the image.  For the videos, the

sub-exhibits are still images from the videos.  For some physical exhibits, the sub-exhibits are

photos of the physical exhibit.  All exhibits have been marked, and a copy of the exhibits (except

sexually explicit images), as well as the exhibit list, have been provided to the Defendant.  The

Government's exhibit list will be filed with the Court, and a copy of the exhibits will be provided

to the Court on the first day of trial.

UNITED STATES' TRIAL MEMORANDUM - 25

i.  Sexually Explicit Images

The Government will seek admission of fifteen sexually explicit images and two sexually explicit videos.  These images consist of (1) six sexually explicit images as evidence of Count One (Ex. 1001, 1002, 1007, 1008, 1009, and 1010); (2) five sexually explicit images as evidence of Count Two (Ex. 1013, 1014, 1015, 1016, and 1017); (3) two sexually explicit videos (Ex. 1018 and 1019) and four still images from one of the videos as evidence of Count Three (Ex. 1018(b), (c), (d), and (e)), and; (4) four sexually explicit images as evidence of Count Five (Ex. 1020, 1021, 1022, and 1023).  The sexually explicit images charged in Count Four (Possession of Child Pornography) are the same images that will be admitted as evidence of Counts Two and Three.  Special Agent Mary Martin also created a demonstrative video which depicts several sexually explicit images that are exhibits, and shows how she accessed the GPS coordinates from the EXIF data using IRFANVIEW and Google Earth.

Because of the sexually explicit nature of the images and videos, the Government requests the court alter the evidence display in the courtroom to avoid publishing the images and videos to the gallery in the courtroom.  This can be accomplished by shutting off the monitors at Government counsel table, by turning the monitor at the lectern to face away from the gallery, and by providing the jury with either individual monitors, or one separate monitor that is not viewable from the gallery.

The Government will seek to limit the jurors' exposure to these images.  The Government will ask that the still images be published when admitted for a period of less than ten seconds. The Government will also request that the videos only be published on one occasion.  The Government will not show sexually explicit images during opening statement, but will rather

UNITED STATES' TRIAL MEMORANDUM - 26

describe them orally.  To the extent that the Government shows the images to the jury during closing arguments, it will not re-publish every sexually explicit image.

### c.   Stipulations

#### i.   Stipulation of Fact Regarding Defendant's Arrest in Salt Lake City, Utah

The parties entered into a stipulation of fact establishing that the Defendant was arrested by the United States Marshal's Service on Salt Lake City, Utah on November 12, 2013.  This stipulation eliminated the necessity of two fact witnesses.

#### ii.   Stipulation of Fact Regarding Identification of Minors in Images

The parties entered into a stipulation of fact establishing that the images in Exhibits 1020, 1021, 1022, and 1023 depict real persons that were either a prepubescent minor, or a minor that had not attained 12 years of age, at the time of the production of the visual depiction.  These four images are evidence relating to count five, which charges Access with Intent to View Child Pornography.  This stipulation eliminated the necessity of four fact witnesses that would have testified to the identification of children in these sexually explicit images.

### d.   Unresolved Pretrial Motions

The parties filed the following motions in limine, along with briefing on the legal and factual issues raised, that seek pretrial rulings on the admissibility of evidence:

 i.   Government's Motion *in Limine* to Admit Other Acts of Defendant and Supplemental Motion *in Limine* to Admit Other Acts.

 ii.   Government's Motion *in Limine* to Admit Forensic Interviews

 iii.   Government's Motion *in Limine* to Admit Evidence of Flight

 iv.   Government's Motion *in Limine* to Admit Trade Inscriptions

 v.   Defendant's Motion *in Limine* and Request for Daubert/Kumho Hearing

UNITED STATES' TRIAL MEMORANDUM - 27

In addition, the Government filed a motion to dismiss Count Six of the Second Superseding Indictment.

To the extent the Court needs to reserve ruling on the Motions *in Limine* pending witness testimony, the Government will avoid referring to that evidence during its opening statement.

## VI.   DISCOVERY

The Government has complied with its discovery obligations by disclosing 3,870 pages of information to date.  The Government continues to disclose newly-obtained information as it receives it.  The Government has permitted defense counsel, and the Defendant, access to the sexually explicit images and videos.  The Government stipulated to provide a defense expert with forensic copies of the images of the Defendant's electronic devices for an independent forensic review.  The Government has additionally invited defense counsel to view the physical exhibits in the custody of the F.B.I., and to view the specific sexually explicit images that have been marked for admission.  Finally, the Government provided expert witness disclosures for Mydell Yeager and Don Lukasik.

To date, the Defendant has not provided reciprocal discovery or any expert witness notices.  The Government will seek to exclude any and all undisclosed documents or materials the Defendant attempts to use at trial other than those used only to impeach a government witness, and objects to any expert witness the Defendant will seek to call to testify.

The Ninth Circuit has held that a defendant's failure to comply with his or her discovery obligations under Federal Rule of Criminal Procedure 16(b)(1)(A) can result in exclusion of evidence at trial.  *See United States v. Scholl*, 166 F.3d 964 (9th Cir. 1999) (upholding district court's decision to exclude defense evidence due to defendant's strategic decision to withhold discovery until the last minute); *United States v. Aceves-Rosales*, 832 F.2d 1155, 1156-57 (9th

Cir. 1987) (holding that district court did not abuse discretion in precluding medical report that the defense wished to introduce in case-in-chief but which it disclosed for the first time after the government had rested); *United States v. Moore*, 208 F.3d 577, 578 (7th Cir. 2000) ("courts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases").

**VII.    FORFEITURE**

The Government will file a separate memorandum addressing forfeiture issues, along with proposed forfeiture jury instructions.

**VIII.   CONCLUSION**

The United States submits that the evidence will establish that the Defendant is guilty beyond a reasonable doubt on all counts charged in the Second Superseding Indictment.

Respectfully submitted this 15th day of October, 2015.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

*/s/ Justin D. Whatcott*
JUSTIN D. WHATCOTT
Assistant United States Attorney


*/s/ Joshua D. Hurwit*
JOSHUA D. HURWIT
Assistant United States Attorney

UNITED STATES' TRIAL MEMORANDUM - 29

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 15, 2015, the foregoing **UNITED STATES'**

**TRIAL MEMORANDUM** was filed electronically through the CM/ECF system, and that a

copy was served on the following parties or counsel by:

| | |
|---|---|
| Thomas Monaghan<br>Federal Defender Services of Idaho<br>702 West Idaho Street, Suite 1000<br>Boise, ID 83702<br>Thomas_Monaghan@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ E-mail |

*/s/ Barbara Layman*
Barbara Layman
Legal Assistant

UNITED STATES' TRIAL MEMORANDUM - 30